# CASES DETERMINED

## August Term, 1878.

---

### LAMPE vs. KENNEDY and others.

EJECTMENT: BOUNDARIES: EVIDENCE. *When plat by which deeds were made has conclusive weight.*

1. Persons having mining claims on a certain quarter-section of land before the same was open to entry, determined by arbitration the boundaries of their respective lots, and had a plat made to show the boundaries thus determined. The quarter-section was then surveyed, and one G., appointed for that purpose by the claimants, entered it for their benefit, and was instructed by them to deed according to the plat, to the persons named thereon; and he testifies that in making his deeds he was solely guided by the plat, although it is not referred to in the deeds. The stakes put up to mark the boundaries of the lots as described in the deeds and designated on the plat, cannot be found; but the boundaries on the plat can be readily ascertained by aid of the government surveys. The plat was never recorded. In a contest as to boundaries between parties claiming under deeds from G. of lots in such quarter-section: *Held*, that the plat should have controlling weight in construing the deeds.

2. The deed under which defendants claim requires the south line of their lot (the line here in dispute) to be so run as to leave standing a certain fence on plaintiff's lot. *Held*, that this does not purport to make such fence the south boundary of defendants' land; and that G. had no authority to change, by his deed, the boundaries fixed by the plat.

APPEAL from the Circuit Court for *Iowa* County.

Ejectment, commenced in 1875, for a strip of land about three rods in width, north and south, and twenty-four rods in length, east and west, a part of the southeast quarter of a

certain section 28. The strip is further described in the complaint as commencing at the southwest corner of Tormey & Co.'s lot; thence south three rods; thence south 81° east, about twenty-four rods; thence north three rods; and thence westerly along the [south] line of Tormey & Co.'s lot, to the place of beginning; and it is alleged that the southwest corner of Tormey & Co.'s lot is eight chains and forty-seven links north from the southwest corner of said southeast quarter-section.

The answer contained a general denial, and set up both the ten-year and the twenty-year statute of limitations.

On the trial, plaintiff introduced in evidence an unrecorded plat of the quarter-section, made by Maj. C. F. Legate, in June, 1847. The origin of this plat is thus stated by Mr. Justice COLE: "The persons who had mining claims on this quarter-section before the land was open to entry, chose arbitrators to settle and determine the actual boundaries of their lots, where they could not agree among themselves. This plat was made to show the boundaries of their respective lots as thus fixed by agreement or by the arbitrators. The quarter-section was then surveyed by Maj. Legate (with another), and he prepared the plat to show the extent and boundaries of each lot. Goodsell, a disinterested party, was chosen or appointed by the claimants to enter the land for their benefit, and he did so. He testifies that he was instructed by these claimants 'to deed to the persons mentioned on the plat, and according to the plat.'" Goodsell further testified that he was "guided solely by the plat in making the deeds."

The lot now owned by the plaintiff is the southwest corner lot of the quarter-section, called on the plat the "Rowell" lot. Adjoining this on the north is the "Tormey & Co." lot, owned by defendants. Next adjoining this northward is what is designated on the plat as the "Rodolf" lot. The deed of this from Goodsell to Rodolf is dated June 10, 1847. It describes the lot as commencing *16 chains and 70 links south* of the northwest corner of the quarter-section; gives the courses and distances of all the sides, and specifies the length of the west-

ern side, on the west line of the quarter-section, as *7 chains and 39 links*. The deed from Goodsell to Bannan, Tormey and others, of the Tormey & Co. lot, is dated July 26, 1847. It describes the boundaries as "commencing at a stake at the northwest corner of Rowell's lot; thence south 81° east, 7 chains and 59 links, *so as to leave Rowell's fence standing on Rowell's lot;* thence north 7° east, 8 chains and 12 links; thence north 86° west, 8 chains and 52 links; thence south *7 chains and 60 links*, to the place of beginning." The stake here referred to is not now found. The deed from Goodsell of the "Rowell" lot was dated April 8, 1850, and ran to one Barnard. It describes the boundaries as commencing at the southwest corner of said quarter-section; "thence east 2 chains 34 links; thence north 3 chains 76½ links; thence east 3 chains 58 links, more or less, to an established corner; thence north *to the line of Tormey & Co.'s lot;* thence westerly *along said line* to the southwest corner of Tormey & Co.'s lot; thence south to the place of beginning, containing three acres." Plaintiff claims under a deed from Barnard, dated June 4, 1853, conveying the same land.

All the deeds above mentioned were put in evidence without objection.

The Legate plat represents the northwest corner of the Rodolf lot as *16 chains 70 links* south of the northwest corner of the quarter-section as there indicated; the west boundary of said lot as *7 chains 39 links;* the west boundary of the Tormey & Co. lot as *7 chains 60 links;* that of the Rowell lot as *8 chains 47 links;* and the total west line of the quarter as 40 chains 16 links, that being the sum of the several distances above stated. The bearings and distances of the boundaries of the first two lots, on said plat, are identical with those in the deeds thereof as above described. The distances as well as courses of *all* sides of the Rowell lot are given on the plat, while the deed of that lot, it will be observed, fails, with a slight exception, to state distances north and south; and the second easting from the southwest corner is specified upon the plat as *2 chains 22 links*, instead of *3 chains 58 links* as in

the deed.    Mr. Goodsell testified that he could not explain the latter variance.

It will thus be seen that *according to the plat* in evidence, the boundary line between the two lots here in question commenced at a point in the western boundary of the quarter-section, 31 chains 69 links south of the northwest corner of the quarter, and 8 chains 47 links north of its southwest corner.

When the Goodsell deeds were made, there was a fence on the Rowell lot running in an easterly and westerly direction, which the defendants claim to have been the fence referred to in the description above quoted from the Goodsell deed of the Tormey & Co. lot, and to have been the true south boundary of that lot.   A fence has been maintained on or near the original line of this fence until the present time.   Plaintiff testifies that in reconstructing the fence he had moved the eastern end three or four feet southward.   Defendants' evidence tended to show that the present fence is on the same line as the old one.   It appeared that at the commencement of the action, defendants were in possession southward to this fence.   It also appeared that plaintiff had a survey made to determine his northern boundary two or three years before this action; and he testifies that before that survey he did not know where his lines ran, and never claimed north of the fence above described.

The remainder of the evidence on either side need not be stated.   It is sufficient to say that, giving conclusive weight to the Legate plat, the jury *might* have found that the true boundary between plaintiff's and defendants' lots was at some distance north of plaintiff's fence, and that defendants had never acquired title by adverse possession.

The court directed the jury to find for the defendants; and from a judgment in pursuance of such a verdict, the plaintiff appealed.

*Wm. E. Carter*, for the appellant, contended, among other things, that the plat was practically the deed of partition of the quarter-section among the claimants; that all deeds made by the plat must. be construed by it, so long as the plat itself

remains unreformed; that Goodsell could not, by any act of his, accidental or willful, change the boundaries of any lot, nor is it of any consequence what he supposed those boundaries to be; that as the plat was Goodsell's only guide in deeding, so it must be the only guide of the court in construing the deeds, until it is set aside in whole or in some part, upon clear proof that it does not correspond with the actual boundaries established by agreement or arbitration; that plats are ordinarily material parts of the description of lands contained in them (*Shufeldt v. Spaulding*, 37 Wis., 662; *Fleischfresser v. Schmidt*, 41 id., 223; *Simmons v. Johnson*, 14 id., 523; *Vilas v. Reynolds*, 6 id., 214; *Powers v. Jackson*, 50 Cal., 429; *Hudson v. Irwin*, id., 450; *Baxter v. Arnold*, 114 Mass., 577); that there is more reason in this case than in most cases for giving to the plat conclusive weight, because Goodsell did not claim to own any of the land, and must be presumed to have conveyed it all, and to have conveyed it according to the directions of his employers, which directions are found only in the plat; that this conclusion is true notwithstanding the fact that the deeds do not *in terms* refer to the plat; that there may be an implied as well as an express reference to a plat or some other prior and collateral instrument (*Shufeldt v. Spaulding* and *Powers v. Jackson, supra; Salaman v. Glover*, L. R., 20 Eq. Cas., 444; *S. C.*, 15 Eng., 436; *Erskine v. Adeane*, L. R., 8 Ch., 756; *Morgan v. Griffith*, L. R., 6 Exch., 70); and that, under the evidence, the deeds in this case must be held to contain such an implied reference. He further contended that acquiescence in, or even an agreement in reference to, a supposed boundary, under a mistake of facts, does not preclude either party from claiming according to the facts when the mistake is discovered. *Warner v. Fountain*, 28 Wis., 405; *Knowlton v. Smith*, 36 Mo., 507; *Kincaid v. Dormey*, 51 id., 552.

For the respondents, a brief was filed by *Lanyon & Spensley* and *M. J. Briggs*, and the cause was argued orally by *Mr. Spensley* and *J. T. Mills*. After a full discussion of the evidence, they argued substantially as follows: 1. The Legate

plat is of no importance in the case. It was not recorded; defendants knew nothing of it; and if Goodsell was governed by a plat in making the deeds, it is apparent that this is not the one, and, even if it was, defendants are not bound by it. They take under their deed, which gives the metes and bounds, and was duly recorded long before plaintiff or his grantors had any claim. 2. To locate the Rowell lot according either to the deed or the plat, the first survey, from which they were made, must be reproduced. If this were done, by commencing at the same corner, with a chain of the same length, etc., it would doubtless result in locating the fence as the dividing line between the lots. 3. Goodsell's deed of the Tormey & Co. lot clearly established its south line along the line of Rowell's fence. This deed was not made with reference to government lines, corners or subdivisions, but with reference to this artificial monument, which must govern as to this boundary. *Coats v. Taft*, 12 Wis., 388; *Gove v. White*, 20 id., 432, and cases cited in opinion of DIXON, C. J.; *Marsh v. Mitchell*, 25 id., 706; *Du Pont v. Davis*, 30 id., 171; *McEvoy v. Lloyd*, 31 id., 142; *Fleischfresser v. Schmidt*, 41 id., 223; *Frost v. Spaulding*, 19 Pick., 445; 3 Washb. R. P., ch. 5, sec. 4, pl. 40-46. 4. The acquiescence for so many years in the Rowell fence as the boundary line between the lots is sufficient of itself to establish that boundary. 2 Hilliard R. P., 349; 3 Washb. R. P., ch. 2, sec. 6, pl. 9; *Rockwell v. Adams*, 6 Wend., 467; *Rockwell v. Adams*, 7 Cow., 761.

COLE, J. We think the learned circuit court erred in directing the jury to find for the defendants upon the evidence introduced on the trial. The plat of the quarter-section made by Major Legate in June, 1847, was in evidence, and should have controlling weight in the construction of all deeds made by Goodsell under it. It appears that this plat, by common consent, was made the common muniment of title by all persons interested in the land, and was intended as a guide to Goodsell in making his deeds. Under these circumstances, the plat would seem to be the best evidence upon all questions of dis-

puted boundary.  Proper weight being given to the plat, it is plain that the evidence tended to show that the plaintiff was entitled to recover a definite portion of land which could easily be identified from such plat and the deeds introduced on the trial.  It is true, the plat is not referred to in the deeds; but we see no reason why this fact should prevent it from being resorted to in order to ascertain the boundary of any lot in dispute.  It appears that the stakes put up to mark the boundaries of the lots as described in the deeds and designated on the plat, could not be found.  There were therefore no artificial monuments which fixed the boundaries, as claimed by defendants' counsel.  But the boundaries on the plat could be readily ascertained from the government surveys.

. It is said by defendants' counsel, that the deed from Goodsell to Bannan and others requires the south line of their lot to be so run as " to leave Rowell's fence on Rowell's lot," and that consequently the fence was an established boundary for the plaintiff's lot on the north.  But it will be noticed that the language in the deed does not make the fence a boundary, but merely says that the south line of defendants' lot must be so run as to leave the fence on the plaintiff's land.  However, when that deed is interpreted by the plat, as it should be, the true boundary between the plaintiff's and defendants' land will be ascertained.  Besides, Goodsell had no authority to change the boundaries as fixed by the plat.

It is said that the defendants knew nothing of this plat, and that even if Goodsell was governed by it in making his conveyances to the several lot-owners, the defendants ought not to be affected by it.  We fail to see any good reason for holding that the defendants should not be affected by the plat.  The defendant *McGuire* was one of the original claimants by whose direction this plat was made; the defendant *Tormey* took his interest on the death of his brother Nicholas, in 1850, who was another of the original claimants; and the other defendants are lessees under these parties.  Under these circumstances, the plat, as it seems to. us, was a proper document to be resorted to, to determine the true boundary line.  True,

the deed from Goodsell to Bannan and others was prior in date to the deed to Barnard, under which the plaintiff claims. But that circumstance is immaterial, inasmuch as the plat was the foundation or common muniment of title for all the claimants, and Goodsell says he was solely guided by it in making his deeds. The plat, therefore, was entitled to controlling weight in determining all questions of disputed boundary.

It follows from these views that the judgment of the circuit court must be reversed, and a new trial ordered.

*By the Court.*— So ordered.