CHILDS, Appellant, vs. NELSON, Respondent.

*April 14 — June 1, 1887.*

*Adverse possession of street: Estoppel by recognition in deed: Evidence as to street: Hudson city: Municipal corporation, power as to street encroachments.*

1. If a city lot-owner fences in a part of the street bounding his lot, with notice of the true line, and without claim or color of title, his occupation thereof cannot be adverse to the public, nor grow into a title.

2. Where a deed bounds a lot by the line of a street the presumption is that the grantee enters under it, and his claim of title is restricted to the premises covered by it.  Even if his grantors had adverse possession of part of the street, he can claim no benefit therefrom.

3. The existence and location of a city street may be proved by a map showing a dedication; by conveyances of lots by the land-owner with reference to such map, or bounding them thereon, the giving or acceptance of which estops the party from denying the street; and by long and continued public user.

4. One who encroaches upon a street and contends that there is no street at that place, or that he has acquired title by adverse possession, makes himself wilfully guilty of such encroachment.

5. Though permanent and valuable improvements, made within a street or upon public ground in good faith, are, perhaps, not subject to summary removal under our statutes, at least where the right is doubtful, or great damage would result, yet, where an encroachment is apparent and readily ascertainable, and is maintained intentionally and wilfully, it may be so removed.

6. The common council of the city of Hudson has power, under subd. 30, sec. 3, subch. 4, ch. 197, Laws of 1885, to remove in a summary manner any nuisance, obstruction or encroachment in the city streets.

APPEAL from the Circuit Court for *St. Croix* County.

The facts are fully stated in the opinion.

For the appellant there was a brief by *R. H. Start* and *L. P. Wetherby*, and oral argument by *R. H. Start*.  Among other things, they argued that if the encroachment was undisputed, yet, to justify a summary removal, the defendant

must establish the fact that it was *per se* a public nuisance. *Goodsell v. Fleming*, 59 Wis. 52; *Hubbell v. Goodrich*, 37 id. 86; *Cole v. Kegler*, 64 Iowa, 59; *Everett v. Council Bluffs*, 46 id. 66; *Denver v. Mullen*, 7 Col. 345; *Wreford v. People*, 14 Mich. 41; *Burnham v. Hotchkiss*, 14 Conn. 311; *Griffith v. McCullum*, 46 Barb. 561; *Howard v. Robbins*, 1 Lans. 64; *Harrower v. Ritson*, 37 Barb. 301; Wood on Nuisances, sec. 740. And even then it must be shown to have worked some annoyance or inconvenience to the public or interference with its safety. *Larson v. Furlong*, 50 Wis. 681, and cases cited; *People v. Carpenter*, 1 Mich. 288; *Clark v. Ice Co.* 24 id. 512. A mere encroachment is not *per se* a public nuisance. *Neff v. Paddock*, 26 Wis. 552; *Highway Comm'r v. Withey*, 52 Mich. 50; *Grand Rapids v. Hughes*, 15 id. 54; *Hopkins v. Crombie*, 4 N. H. 520. If the thing destroyed was not a nuisance *per se*, it adds nothing to defendant's justification that he was street commissioner. *Pye v. Peterson*, 45 Tex. 312; Wood on Nuisances, sec. 740.

The fact of the encroachment was disputed and not ascertainable without an adjudication, and the city council could not lawfully, in such a case, proceed *ex parte* to determine the necessary facts, and order the summary removal. *Yates v. Milwaukee*, 10 Wall. 497; *Pieri v. Shieldsboro*, 42 Miss. 493; *Salem v. Eastern R. Co.* 98 Mass. 431; *State v. Jersey City*, 29 N. J. Law, 170; *Soule v. State*, 19 Wis. 596; *State v. Preston*, 34 id. 690; *Clark v. Jersey City*, 13 Barb. 36; *Gregory v. Knight*, 50 Mich. 61; *Miller v. Burch*, 32 Tex. 208. The power given by the city charter in this case is a mere police power, and does not authorize a summary removal, except where the obstruction or encroachment is apparent and readily ascertainable. If it does authorize such removal by *ex parte* proceedings, it is in conflict with the constitution of the United States, since title to land is involved and can be determined only by a

trial in due course of law. *State v. Mayor*, 45 N. J. Law, 501; *State v. Jersey City*, 34 N. J. Law, 31; *Sheldon v. Kalamazoo*, 24 Mich. 383. But, in this case, the city council did not determine that anything in that street was an obstruction or encroachment, but left that question to the street commissioner, and its resolution is arbitrary and unreasonable, and therefore void. *Barling v. West*, 29 Wis. 307; *Hayes v. Appleton*, 24 id. 542.

There was no sufficient evidence of dedication. By user the public have simply acquired a highway, the width of which cannot be extended beyond that actually used, and certainly not so as to include land inclosed by plaintiff's fence. *Valley P. & P. Co. v. West*, 58 Wis. 607; *Cahill v. Layton*, 57 id. 611; *Strong v. Makeever*, 4 N. E. Rep. 14; *McKay v. Doty*, 30 N. W. Rep. 591; *Coleman v. R. R. Co.* 31 id. 47; *Davis v. Clinton*, 58 Iowa, 389; *Wayne Co. v. Miller*, 31 Mich. 447; *Pratt v. Lewis*, 39 id. 12; *Talmage v. Huntting*, 29 N. Y. 447; *Marvin v. Pardee*, 64 Barb. 353. But if a street was ever dedicated there, the entry of plaintiff's predecessor in title under claim of title, and the continuous and exclusive possession under that claim for nearly thirty years, has cut off the right of the public. The statute runs against the public as well as against a municipal corporation. Sec. 4229, R. S.; *Scheuber v. Held*, 47 Wis. 340; *Knight v. Heaton*, 22 Vt. 480; *Varick v. New York*, 4 Johns. Ch. 53; *Beardslee v. French*, 7 Conn. 125; *Richmond v. Poe*, 24 Gratt. 149; *Armstrong v. Dalton*, 4 Devereux, Law, 568; *State v. Pettis*, 7 Rich. Law, 390; *Clements v. Anderson*, 46 Miss. 581; *Galveston v. Menard*, 23 Tex. 349; *Callaway Co. v. Nolley*, 31 Mo. 393; 49 id. 461; *School Directors v. Georges*, 50 id. 194; *Rowan's Ex'rs v. Portland*, 8 B. Mon. 233; 12 id. 610; 16 id. 131; *Cincinnati v. Evans*, 5 Ohio St. 594; *Cincinnati v. First Presb. Church*, 8 Ohio, 298; *Peoria v. Johnston*, 56 Ill. 45; 79 id. 40; *Pella v. Scholte*, 24 Iowa, 283; 41 id. 134; *Wheeling v. Campbell*, 12 W. Va. 66;

*Gregory v. Knight,* 50 Mich. 61; *Ellsworth v. Grand Rapids,* 27 id. 250; *Evans v. Erie Co.* 66 Pa. St. 222; *Big Rapids v. Comstock,* 31 N. W. Rep. (Mich.) 811; *Weeping Water v. Reed,* id. 802; *Fort Smith v. McKibbin,* 41 Ark. 45.

*J. W. Bashford,* attorney, and *L. M. Vilas,* of counsel, for the respondent, contended, *inter alia,* that St. Croix street was dedicated by the plat of Hudson, and has been fully recognized by the plaintiff and his predecessors in title by their deeds, and the plaintiff is estopped to deny such dedication. *Ely v. Bates,* 5 Wis. 467; *Sanborn v. C. & N. W. R. Co.* 16 id. 20; *Warden v. Blakley,* 32 id. 690; *Racine v. J. I. Case Plow Co.* 56 id. 539; *State v. Schwin,* 65 id. 207; *Henshaw v. Hunting,* 1 Gray, 203; *Mayor of Jersey City v. Morris C. & B. Co.* 12 N. J. Eq. 545, 562; *Clark v. Elizabeth City,* 40 N. J. Law, 172; *Trustees M. E. Church v. Hoboken,* 33 N. J. Law, 13; Angell on Highways, sec. 149; *Gridley v. Hopkins,* 84 Ill. 528; *Zearing v. Raber,* 74 id. 409; *Smith v. Flora,* 64 id. 93, and cases cited in the opinion. The plaintiff cannot claim by adverse possession any land not within the deed under which he entered and that expressly bounds his land on the street. *Crary v. Goodman,* 22 N. Y. 170; *Pope v. Hamner,* 74 id. 240; *Quinn v. Quinn,* 27 Wis. 168, and cases cited in the opinion. A title to a street cannot be acquired by adverse possession, by reason of a non-user by the public while not needed for actual use. *Reilly v. Racine,* 51 Wis. 526; *State v. Leaver,* 62 id. 387; *Derby v. Alling,* 40 Conn. 410; *Burbank v. Fay,* 65 N. Y. 57; *Bliss v. Johnson,* 94 id. 235; *Driggs v. Phillips,* 103 id. 77; *Marton v. Moore,* 15 Gray, 573; *Solberg v. Decorah,* 41 Iowa, 501; *Cheek v. Aurora,* 92 Ind. 107; *Sims v. Frankfort,* 79 id. 446; *Lane v. Kennedy,* 13 Ohio St. 42; *Visalia v. Jacob,* 65 Cal. 434; *Vicksburg v. Marshall,* 59 Miss. 563. The fence in this case was an encroachment in the street, and the city had ample power under its charter to remove the same summarily. *Racine v. Crotsenberg,* 61 Wis. 481; *Smith*

*v. Oconomowoc*, 49 id. 694; *Neff· v. Paddock*, 26 id. 546; *Hubbell v. Goodrich*, 37 id. 84; *Cook v. Harris*, 61 N. Y. 448; *Van Wyck v. Lent*, 33 Hun, 301; *Baumgartner v. Hasty*, 100 Ind. 575; *Kreuger v. Le Blanc*, 28 N. W. Rep. (Mich.) 757.

ORTON, J.   The appellant, as plaintiff, alleges that the defendant, on the 10th day of January, 1886, wrongfully entered upon his premises at the northwest corner of Second and St. Croix streets, in the city of Hudson, and cut down and broke the fences thereon.   The respondent answered that he was street commissioner of said city, and removed said fences as such, in obedience to the direction of a resolution passed by the aldermen of said city on the 6th day of January, 1886, directing and commanding him to remove the fences from St. Croix street, between Second and Third streets, in a summary manner.   This was, in substance, the issue.   The findings of the court are all in favor of the defendant, and the complaint was dismissed, and this appeal is taken from such judgment.   The main facts disclosed by the evidence, deemed material to the decision of the case, are substantially as follows: In 1885 " Gibson & Henning's " addition to Hudson was laid out, having on the north Division street, and, going south, River, St. Croix, Oak, and finally Myrtle street, all running east and west, and parallel to each other, and with the intervening blocks.   Whether these streets are extensions westward of streets of the same name in the original plat of the village I am not informed, but presume this to be so.   These streets are sixty-six feet, or four rods, wide.   In 1856, " Gibson, Henning & Massey's " addition was laid out on the west, and the above streets, down to and including St. Croix street, are extended through it to the west, and the intervening blocks on either side of Third street, which divides these additions, are apparently of the same dimensions, blocks D and C, east of that street,

corresponding with blocks I and J, west of it; and the lots are numbered in all of these blocks from 1 to 12, beginning at the northeast corner, and running down, and then up, and separated alike by an alley running north and south. Blocks I and J are separated by River street, and on the west are separated from blocks K and N by Second street, which are also separated by River street, which runs to First street, on the lake. These blocks are in the second addition, and the plaintiff's lot is in block J, and should have been numbered lot 7, in order to correspond with the numbering in the other blocks, as also in block J; for in the latter block the first series are numbered from 1 to 6, and then there appears to have been an omission of the numbers of three lots, 7, 8, and 9, of equal size however, and then lots 9, 10, 11, and 12 above are numbered. The east and west line on the south of block J is fixed on the plat as the north line of St. Croix street, and in the field-notes of the survey block J is bounded on the south by St. Croix street by name, and on the north by River street, on the east by Third street, and on the west by Second street. The land on the south of St. Croix street, opposite block J, was not platted, but in 1857 one of the proprietors of the plat, Louis Massey, owned the land, and deeded to Bishop Henni a lot for a Catholic church, bounded in part as follows: "Beginning at 72 feet east of the corner of Second and *St. Croix* streets, and 66 feet south of southwest corner of block J, in G., H. & M.'s addition; and thence east 114 feet," etc. The church was either then or afterwards built on said lot south of St. Croix street, and has been used in connection with that street ever since.

There are two discrepancies, which should here be noticed, and which probably have given rise to all the question or doubt entertained by any one as to the west end of St. Croix street. The first is that, according to resurveys, St. Croix street is a few feet further north in the first addi-

tion than in the last, and they do not quite agree by reason of the jog so produced. Whatever discrepancy there is should be and was reduced by equal and *pro rata* parceling or deduction among the lots north, so as to make the street straight across or through the two additions and agree, which is the proper way (*O'Brien v. McGrane*, 27 Wis. 446; *Fleischfresser v. Schmidt*, 41 Wis. 223); for the design to make St. Croix and all the streets of the two additions agree perfectly is too obvious for doubt. The other discrepancy is between the boundary of block J and that of the west end of St. Croix street in the field-notes. St. Croix street is described as extending west from the southeast corner of block J, 181½ feet, which would not carry the street more than half way on the south side of the block to Second street. These figures are evidently a clerical error. The boundary of block J is given in words which bear the impress of accuracy. A complete boundary of the block was intended, and there is no more reason or likelihood of a mistake in mentioning St. Croix street as its south boundary than that of River street as its north boundary. Distances, which are very liable to mistake, yield easily to better evidence. To avoid all question about the west end of the street, in consequence of this discrepancy, the city, in 1874, purchased and procured a conveyance from the original owner of the land within this disputed tract. We shall therefore treat the above facts as established by the evidence. The evidence is conclusive that the whole length of St. Croix street has been constantly used by the traveling public as a street since it was laid out, and as much so over its entire width as streets similarly situated are accustomed to be used. There has been a continuous user of this street by the public for thirty years or more. Before the additions were laid out it was an old, mainly-traveled highway from and to the village. There does not appear to have been any necessity for opening and improving it over

its entire width of sixty-six feet until recently. The author-ities of the city deemed it proper to now open it, and, having found the plaintiff's fence about his lot 7 an en-croachment upon it, ordered its summary removal. As to the location of lots 7, 8, and 9, there is no question, and they are recognized by many conveyances, and have been always treated as so numbered. In 1856 Louis Massey and wife deeded the *east* part of lot 7 to one Decimus Bell, by com-mencing eighty-three and three-fourths feet east of the south-west corner of lot 8, in block J, thence east eighty-one and three-fourths feet; thence to an alley stake *on north side of St. Croix street*, etc.; and by same description it came by mesne conveyances to Sophia L. Coon, in 1865. In 1875, Mrs. C. M. Henderson, who had become entitled to the other or west end of lot 7, by mesne conveyances from the proprietors, deeded it to John Coon, the husband of Sophia, by the same description as in the former deeds, as follows: "Commencing at southwest corner of lot 8 in block J; thence east 76 feet, more or less, to a cedar stake; thence south 66 feet; thence west 76 feet, more or less, to Second street; thence north 66 feet, to the place of beginning." This comprises the whole of lot 7 by metes and bounds, and it is bounded on the south all the way by St. Croix street by name.

In the same year (1875) John Coon and his wife, Sophia, joined in a deed of the whole of lot 7 to one Anna Boshart by the following description: "Commencing at southwest corner of lot 8, in block J, in said addition; thence east to an alley passing north and south through said block; thence south *to the north side of St. Croix street;* thence west to the east side of Second street; thence north to the place of be-ginning." In 1882, Anna Boshart conveyed lot 7 to the plaintiff by the same description. The testimony is a little uncertain just how long the fence south of lot 7 has en-croached upon St. Croix street, and there is no finding upon

it, but the evidence would justify the finding that it is less than twenty years, but more than ten. It was evidently built within the street in the first place by mistake of lines, but it appears to have been continued and maintained by the plaintiff, and perhaps by his grantor, designedly and wilfully. The plaintiff makes himself wilfully guilty of the encroachment by his contention that there is no lawful street south of that part of lot 7, and that he is entitled to that part of St. Croix street inclosed by it by adverse possession. He does not question that St. Croix street extends south of lot 6 to the west side of the alley, and is its boundary on the south, and that it is sixty-six feet wide; but he insists that there it ends, and that it does not extend to Second street. (1) The map or plat of Gibson, Henning & Massey's addition most clearly shows a dedication of St. Croix street all the way from Third to Second street. The south line of block J shows it. The block is bounded on the south by St. Croix street in the field-notes. The extension of St. Croix street in "Gibson & Henning's" addition, and of other parallel streets, through the last addition to Second street, shows it. The extension of St. Croix street to the alley in block J, which is admitted by plaintiff's counsel, shows a design to extend it to Second street as its only proper and natural outlet or end. (2) The conveyance of a church lot on the south side of the west end of St. Croix street, by one of the original owners to Bishop Henni, the next year after the addition was laid out, shows that it was the design of the proprietors to so lay out and dedicate St. Croix street. (3) The many conveyances of various owners of lots 7, 8, and 9, which recognize the dimension and location of said lots, show the limitation of lot 7 by St. Croix street. (4) The deeds and mesne conveyances of the various grantors of lot 7 before the deed to the plaintiff show it. (5) Finally the plaintiff, by accepting a deed which distinctly bounds lot 7 all the way on the

south by St. Croix street, shows his recognition of said street and he is thereby estopped from questioning it. (6) It has had a very long and continuous user by the public as St. Croix street.

There never was a case so ably and vigorously contested in which the *locus in quo* of the encroachment was so conclusively shown to be a lawful street by every test known to the law. *Barteau v. West*, 23 Wis. 416; *Lampe v. Kennedy*, 45 Wis. 23; *Jarstadt v. Morgan*, 48 Wis. 245; *Lampe v. Kennedy*, 49 Wis. 601; *Trerice v. Barteau*, 54 Wis. 99; *Cook v. Harris*, 61 N. Y. 448; *Fox v. Union S. Refinery*, 109 Mass. 292; *Reilly v. Racine*, 51 Wis. 526. The settled doctrine as to the dedication of streets in villages and cities is too familiar to need further reference. There is no necessity or propriety, in a case made so plain and certain by so many permanent monuments, of resorting to the always uncertain and doubtful tests of re-surveys, distances, and measurements, except to confuse and obscure it. I have therefore said nothing about that part of the evidence. The contention that the plaintiff acquired some estate or right in the part of St. Croix street inclosed by his fence, by adverse possession of himself and grantors, is almost too groundless to be candid. If the whole street had been so long inclosed and occupied, such a claim would be more excusable. But the public have been in the continued occupancy and enjoyment of this street to the extent necessary, much longer than the plaintiff's grantors have been in the possession of this small part of it. As a street or a part of a street, how, then, can the plaintiff's possession be called adverse to the public. His occupancy, and that of his grantors, have been, at most, jointly with the public, and in continued recognition of the public right. Their possession was, in the first place, a trespass and an encroachment merely, without claim or color of title; and it may perhaps be strictly called a disseizin, so as to allow ejectment to be brought to recover

it, as well as trespass for the wrong; but it was not *adverse* to the public, and could not grow into adverse possession. *McCourt v. Eckstein,* 22 Wis. 153. The plaintiff and his grantors were all the time chargeable with the notice of the true line between themselves and the public, or the true south line of lot 7 and the north line of St. Croix street, and therefore their holding of this strip of land within the street could not be adverse. *Warner v. Fountain,* 28 Wis. 405. The public has always used the street as far as necessary, and the time had arrived when the city authorities deemed it proper that the whole street should be opened to the public use, and that all encroachments or obstructions should be removed, and, against the right of the authorities to do so, adverse possession cannot be set up. *Reilly v. Racine, supra.* That limitation or prescription cannot be set up against the public, see authorities cited in respondent's brief. But the plaintiff or his grantors never had even *colorable* title to any part of St. Croix street which they, or either of them, have occupied. The plaintiff's deed limits him to the north line of St. Croix street. He cannot, therefore, claim the adverse possession of his grantors, if they had any. The presumption is that the plaintiff entered under his deed. The possession given him by his grantor was only co-extensive with his title, and was restricted to the premises granted. *Sydnor v. Palmer,* 29 Wis. 252; *Pepper v. O'Dowd,* 39 Wis. 548; *Graeven v. Dieves,* 68 Wis. 317. Adverse possession under a deed is measured by the title attempted to be conveyed, and is limited to premises actually covered by the deed. *Stevens v. Brooks,* 24 Wis. 326; *McEvoy v. Loyd,* 31 Wis. 142; *Furlong v. Garrett,* 44 Wis. 111.

It is contended, further, that this fence has been so long in the street, or the boundary of the plaintiff's possession, that it cannot be removed *summarily* as an encroachment. The learned counsel of the appellant cites many respectable

authorities to show that permanent and valuable improvements, made within a street or upon public grounds in good faith, and where the right was at least doubtful, and summary removal would result in great damage, and such like encroachments, are not subject to removal in the manner pursued in this case.

The cases of *Dawes v. Hightstown,* 45 N. J. Law, 501, and of *State v. Jersey City,* 34 N. J. Law, 31, are cited as having arisen under a similar charter power of summary removal, and in which it was held that such a power " was a mere public power, ministerial in its nature, and designed to relieve the public from such obstructions in streets as are *apparent* and *readily ascertainable* without the necessity of adjudication," etc. With all due deference to the learned counsel, it would seem that this was just such a case as last described. So far as this plaintiff is concerned, he had not the shadow of a right to question the legality of this street. He purchased subject to it. The encroachment was *readily ascertainable,* and, indeed, was quite *apparent;* and the facts show that the plaintiff ought not to have sought any adjudication of his rights, but should voluntarily, like a good citizen, have removed his fence from the street as soon as he learned that it was an encroachment, and he must have known it by the terms of his own deed, and by record evidence of the dedication of St. Croix street by a map or plat fixing the south line of block J and the south line of lot 7 as the north line of the street. The plaintiff would seem to have maintained and kept his fence within the street *intentionally* and *wilfully* after he must have known that St. Croix street was a lawful street, and the exact north line of it is the south boundary of his own lot. This would make its summary removal by the proper legal authorities lawful and justifiable under the general statutes. *State v. Leaver,* 62 Wis. 387; *Hubbell v. Goodrich,* 37 Wis. 84; *State v. Preston,* 34 Wis. 675.

Childs vs. Nelson.

In several cases in this state the very defenses set up by the plaintiff in this case for his maintenance of the fence within St. Croix street have been passed upon, and decided over and over again to be utterly unavailable. It is not a mere question of boundary, about which there may be an honest mistake or doubt, but the bold and baseless claim by the plaintiff that there is no street south of his lot, or, if there is, that the part of it within his inclosure belongs to him by adverse possession. He knew perfectly well that both of these claims were groundless, without any special adjudication in court. The special provision of the charter of the city of Hudson, found in subd. 30, sec. 3, subch. 4, ch. 197, Laws of 1885, gives to the aldermen of Hudson ample power to remove in a summary manner any nuisance, obstruction, or encroachments upon the streets of the city, and the authorities cited in the brief of respondent's counsel are sufficient in justification of the action of the city authorities in this case. But enough, and perhaps far more than necessary, has been said in disposing of this case. I have given a fuller exposition of it in order to show that there is not the least defense, justification, or excuse for this action. After the many cases decided by this court in respect to the streets of our cities and villages encroached upon by selfish lot-owners, it would seem that every question that could be raised in such cases had been disposed of in favor of the public right, and that such cases would be discouraged, and cease.

*By the Court.*— The judgment of the circuit court is affirmed.