Sheppard vs. Wilmott.

SHEPPARD, Appellant, vs. WILMOTT, Respondent.

*January 20 — February 3, 1891.*

*Public lands: Fractional lot: Patent construed: Adverse possession.*

1. The northeast quarter of the southeast quarter of a section was fractional, and, together with a small triangular piece north of the quarter-section line, was platted by the government as lot 4 of the section, the plat showing that such lot contained 39.56 acres. A patent describing the land granted thereby as the northeast quarter of the southeast quarter of said section, containing 39.56 acres — that being the quantity of land paid for by the patentee,— is *held* to convey to the patentee the whole of lot 4. The fact that said lot is in two quarter sections is not important.
2. The grantee of land cannot have the benefit of his grantor's adverse possession of land not included in the conveyance.

APPEAL from the Circuit Court for *Walworth* County. The action is to recover damages for an alleged trespass

upon certain land in section 8, township 4 N., of range 18 E., in Walworth county. It is alleged in the complaint that plaintiff was in peaceable possession of the land when the trespass was committed by defendant. The answer is a general denial, and an allegation that the defendant is, and then was, the owner of the land. The following diagram will sufficiently show its location:

The land in dispute is the triangular piece bounded on the east by the west line of lot 3 in section 9, on the south by an extension west to the lake of the south line of lot 3, and on the northwest by the lake. The south line of said lot 3, and lot 2 in section 8, is a quarter-section line.

Lot 4, in section 8, is part of what is known as the "Crosswaite Farm," and lot 3, in section 9, is part of what is known as the "De Puy" or "Bay View" farm. These are quite large farms adjoining each other, and are divided by a line commencing at the quarter post in the line be-

tween sections 8 and 9 (which is at the southwest corner of lot 3), and running southeast through section 9 as far as such farms extended in that direction. More than thirty years ago the respective owners of the two farms built a fence on that line. They also continued the fence from the quarter post northwesterly to the lake, and maintained the same until the defendant tore it down in 1889. The fence is indicated by the dotted line on the diagram.

The circuit court found, in substance, that the defendant entered upon the land in controversy, and removed therefrom a part of the fence; that plaintiff was in peaceable possession of the land at the time, but made no claim of title thereto, and had none; that defendant was the owner of such land through mesne conveyances from one Hotchkiss, to whom it was patented by the United States in 1843; that the premises had not been held adversely by any one before 1873, but De Puy, under whom plaintiff was in possession, claimed so to hold them from that date; that they were inclosed with lot 3, and used in conjunction with that lot for pasturage more than thirty years; that until shortly before this action was commenced the former owners of both farms supposed the land in question belonged to the owner of lot 2 in section 8, and some of them discussed the propriety of instituting proceedings to compel him to fence it; and that such fence across the *locus in quo* had been maintained by De Puy and his grantors, as a matter of convenience in confining stock, neither of such parties knowing where the lines of the lot were, or who owned it.

On these findings, and pursuant to the conclusions of law therefrom, the court gave judgment for defendant, dismissing the complaint, with costs. The plaintiff appeals from the judgment.

*E. Merton,* for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *T. W. Spence.*

LYON, J.   If the defendant was the owner of the land in controversy, he had the undoubted right to make peaceable entry thereon and remove the fence, notwithstanding the plaintiff was in possession thereof.   There is nothing in the record  tending to show that such entry was made " with strong hand, nor with a multitude of people," and we therefore infer that it was made " in a peaceable manner." (R. S. sec. 3360.)   The defendant derives his title through mesne conveyances from the original patentee, Hotchkiss. If the latter obtained title under the government patent to him, the record title is in the defendant, for no attack is made upon any of such mesne conveyances different from that made upon the patent.

The learned counsel for plaintiff maintained in his argument that the patent did not convey the land to Hotchkiss, because the land described in it is " the northeast quarter of the southeast quarter of section 8," and not lot 4.   The argument is that the description does not include any land north of the quarter-section line, and consequently does not include the triangular piece in question, which is north of such line.   The government survey and official plat is in evidence, and the plat shows on its face that lot 4 includes such triangular piece.   The omission of the quarter-section line along its south side, and the facts that the  quantity of land in lot 4 is marked upon the plat, and that it contains over thirty-nine and one-half acres, render this plain.   The quantity of land in a forty-acre government subdivision, not fractional, is never marked on the official plat thereof, and, if it was, this lot could not contain thirty-nine and one-half acres, without including therein the triangular piece.   Including the same, it would contain just about that number of acres.   All this is obvious from an inspection of the plat.   The lot should have been described in the patent as lot 4, but we think the description therein is the equivalent of lot 4.   This appears from the fact that

the number of acres in lot 4, to wit, 39.56, is specified in the patent, and was paid for by the patentee. Moreover, the governmental officials had no authority to convey a portion of lot 4, and not the whole of it, and it cannot be presumed they intended to do so.

The fact that lot 4 is in two quarter sections is not important. A given fractional lot may be crossed by a quarter section line, as in *Shufeldt v. Spaulding*, 37 Wis. 662, and often is. *Martin v. Carlin*, 19 Wis. 454, is relied upon by counsel as establishing a contrary rule. But it does not. In that case there was a mistake in the government survey and plat, and it was found impossible to adjust a division line between two fractional lots, so as to fulfil all the conditions of the plat and corrected survey. The court established the line as it was located on the plat. We do the same here, and thus fulfil all the conditions of the plat, because there is no mistake therein to prevent. We conclude the court correctly found that defendant held the record title to the land in question when he took down the fence. It follows that he committed no trespass in so doing, unless the plaintiff has shown a better title than his.

It is maintained by counsel for plaintiff that De Puy, under whom the plaintiff claims, obtained title to the land by more than twenty years adverse possession thereof. The circuit court negatived the claim, and we think the findings in that behalf are fully supported by the evidence. It will serve no useful purpose to discuss or even state the testimony. It has been carefully examined, and it impresses upon our minds the same conviction it did upon the mind of the learned circuit judge, as expressed in the findings of fact. But if we are wrong in this view,— if De Puy was in the adverse possession of the land in question from 1853, as counsel for plaintiff maintains,— such possession is not available to the plaintiff, for reasons which will now be stated. In 1887, De Puy executed to the plaintiff a con-

tract for the future conveyance to him of certain lands, described therein by metes and bounds, which includes lot 3, but does not include the triangular piece in dispute. A year later, and a year before the alleged trespass was committed, plaintiff released from the contract a strip of land on lot 3 along the whole west line thereof, adjoining lot 4. He has therefore no conveyance, or agreement for one, of such triangular piece. On the authority of *Graeven v. Dieves*, 68 Wis. 317, he cannot, under these circumstances, have any benefit of De Puy's adverse possession. See, also, *Childs v. Nelson*, 69 Wis. 125, and cases cited.

So, in any view of the case, plaintiff had the mere naked possession of the land without title or color of title; and the defendant, having the absolute title thereto, might lawfully make peaceable entry thereon and remove the fence without committing trespass or rendering himself liable to respond to the plaintiff in damages for so doing. The judgment of the circuit court must therefore be affirmed.

*By the Court.*— Judgment affirmed.