Dhein vs. Beuscher and others.

DHEIN, Respondent, vs. BEUSCHER and others, Appellants.

*October 1 — October 25, 1892.*

*Adverse possession: Division fences: Trespass.*

1. The grantee of a specifically described tract of land cannot tack the possession of her grantors to her own in order to make out adverse possession for twenty years of a strip of land adjacent to that granted, but which is not included in any of the conveyances constituting her chain of title, and as to which there is no privity between her and her grantors.

2. The question whether, in this case, the owners of adjacent lands had agreed upon and established a dividing line, and had actually claimed and occupied the land up to said line on each side continuously for twenty years, was properly submitted to the jury.

3. Where, by reason of a division fence not being on the true line, the owner of a certain tract of land was in possession also of an adjacent strip, to which, however, she had not acquired title by prescription, and the owner of such strip peaceably and without objection entered thereon and constructed a new fence upon the true line, the subsequent taking down and removal of such new fence by the land-owner first mentioned was a trespass for which the owner of the strip may maintain an action.

APPEAL from the Circuit Court for *Washington* County.

The plaintiff complained of the defendants for breaking and entering premises May 28, 1891, of which he claimed to be the owner and in possession, being the S. W. ¼ of the N. W. ¼ of section 16, etc., and tearing down and destroying a certain fence thereon, to his damage $50. There was a second count, alleging trespass to the plaintiff's crops and fences three days thereafter. The defendants answered by general denial, and also claiming that the part of the real estate and fence mentioned in plaintiff's complaint upon which the alleged trespass was charged to have been committed was not the real estate and fence of the plaintiff, nor was he then in or entitled to possession thereof, but the same was at the time, etc., the property of the defendant *Sarah Beuscher*, and in her possession; and that the said several supposed acts of trespass were done or caused to be done by her and her codefendants in and about her own lands in the management of the same, as she might lawfully do.

The testimony disclosed the fact that the dispute between the parties was in respect to the proper location of the line, eighty rods in length, between their respective estates. The fence that had originally been built between the two estates, and according to which they had been used and occupied, stood over on the premises, as it was claimed, of the plaintiff, leaving a strip of nearly six tenths of an acre in extent claimed by the plaintiff within the inclosure of the defendants' farm. This rail fence had been maintained for twenty-five or thirty years by the respective parties, their grantors and predecessors in interest, and it was claimed on behalf of the defendants that the defendant *Sarah Beuscher* and her grantors and predecessors in interest had held said strip of land adversely for more than twenty years, claiming title thereto, and so was entitled to the same, and that, as it was inclosed as a part of her field,

the plaintiff was not in possession of it so as to be entitled to maintain an action of trespass as for breaking and entering his close.

The forty-acre tract of land of the defendant *Sarah Beuscher* was owned by Peter Klumb until August 30, 1855, when he conveyed the same to D. Klumb, who, on the 26th of April, 1864, conveyed to *Philip Beuscher, Sr.*, and he, on the 1st of October, 1870, conveyed the premises to Philip Beuscher, Jr., who, on January 6, 1887, conveyed them to *Philip Beuscher, Sr.*, and he on the same day conveyed them to *Sarah Beuscher*, the defendant. The proof showed that the grantors and predecessors in interest of the defendant *Sarah Beuscher* had cultivated and occupied the land up to the fence which had originally been constructed and continually maintained, and which was supposed at the time to have been built on the line when the land was first cleared. The old line or fence was curved. In some places it was twenty feet, in some twenty-eight feet, and in some ten feet from the true line. David Klumb testified that he occupied the land claimed by the defendant *Sarah Beuscher* from 1855 to 1864; that there was a rail fence between this tract and plaintiff's land. The land was cleared about one third the length of the line on one side up to the fence, and he cultivated clear up to the fence, and claimed the land up to the fence all the time he was in possession. He and Dhein, plaintiff's grantor, repaired this fence. Dhein's share was the south part, and Klumb's the north part. The line was surveyed by Brosius twice, and the fence found to be on the line. *Philip Beuscher* testified that after he bought of Klumb he claimed up to the fence. Dhein owned on the other side, but it was all woods, and no one lived on it. *Philip Dhein* and his father had possession. "Crops were raised on my side down to the present time. The fence has stood there ever since. My son Philip occupied it in the same manner after I sold to him in 1870. In

1878 he died, and I bought the land, and conveyed it to the defendant *Sarah Beuscher*, his wife."

When Philip Beuscher, Jr., owned the land, and before he conveyed to the defendant *Sarah Beuscher*, and on the 11th day of May, 1885, he entered into an agreement with the plaintiff, reciting that the parties thereto "are the owners of adjoining lands," dividing the line between them, which is described as follows, to wit: "Commencing at a point, being the southeast corner of the southwest quarter of the northwest quarter of section sixteen," etc.; "from thence running north to the northeast corner of the said southwest quarter of the northwest quarter of said section, the same being a distance of eighty rods. Said *Philip Dhein* is the owner of the land on the west side, and Philip Beuscher, Jr., is the owner of the land on the east side of said line, and they desire to make partition of said line so as to ascertain and assign to each said owner his portion of the partition fence to be built and maintained thereon." And it was in and by said agreement agreed that such line "be, and the same is hereby, partitioned and assigned as follows, to wit: The south half thereof, being about forty rods, more or less, shall belong and is hereby assigned to the said Philip Beuscher, Jr., and the north half thereof, being an equal length, shall belong and is hereby assigned to the said *Philip Dhein*. Both parties agree to keep their fence in good repair." This agreement was sealed, witnessed by two witnesses, and acknowledged, and filed of record in the office of the town clerk of the town, May 11, 1885.

There was a survey made of the line between the premises in May, 1886, by a Mr. Leins, while Philip Beuscher, Jr., owned the premises, and he was present and assisted in making it, and in carrying the chain, when the line was established and found to be as claimed by the plaintiff. This was after the execution of the agreement referred to.

Immediately afterwards the plaintiff, *Dhein*, commenced building a fence on the new line, and built and completed about seven or eight rods, and he took down the old fence opposite to where this portion of the fence stood, and this was the condition of things when the defendant *Sarah Beuscher* bought her property. In the spring of 1891 the plaintiff, *Dhein*, built about thirty rods more of post and wire fence on the line, as thus surveyed, between him and the defendant; and testimony was given that about the 28th of May thirty rods of the fence was torn down by the defendants, the posts were taken out, and the whole was thrown on one side; that he rebuilt it again two days thereafter, when it was torn down again, and the posts sawed off. Evidence was given tending to show the damages.

The defendants' counsel asked the court to charge the jury (1) that the plaintiff could not recover unless he had actual and lawful possession of the premises at the time when the alleged trespass was committed; that if the defendant *Sarah Beuscher* was in the actual possession of said lands at the time and place where the trespass was committed, then the plaintiff could not recover. The court refused to so instruct the jury. He also requested the court to charge the jury (2) that, if they found that the old rail fence was erected by a former owner of the land, and consented and agreed to by Philip Dhein, Sr., the father of the plaintiff, and agreed upon as the dividing line between their respective premises in 1853, and that they and the subsequent owners of the said premises actually claimed and occupied the lands on each side of the rail fence continuously for twenty years or more prior to the time when such new fence was placed on the land by the plaintiff, such possession would be adverse, and confer a title in fee by prescription; and that it was immaterial whether this old division fence was built and maintained on the exact line between the adjacent lands or not; (3) that

the agreement to divide the line in 1885, after the title
in fee had ripened by adverse possession, would not work
a change of the old line; but the court refused to so charge.
The circuit judge charged the jury that to constitute ad-
verse possession of the premises, the possession must be
under claim of title, and be continuous. The premises
must be inclosed by an inclosure, or occupied in the usual
way of farming lands. That the important question in the
case was whether this old rail fence was established as a
true line between the parties, or whether it was a matter
of convenience in an early day when the ground was cov-
ered with timber, and when they were not perhaps as par-
ticular. Was it a temporary arrangement until after they
could determine the line? The possession, to be adverse,
must be under a claim of title. There must be some evi-
dence that the parties agreed upon the old fence as the
true line; or did each occupy up to the old fence, claiming
title? You are to determine from the evidence whether
the old line or fence was intended to be a division be-
tween the parties and a location of the true line, or whether
it was a temporary expedient for the time being. That, if
they found that the defendant, and those under whom she
claimed, had held the premises under claim of title, claim-
ing the old fence was the true line and that they were the
owners of all on the east side of the fence, and had occu-
pied it all the time up to this time, that was a perfect de-
fense; but if it was not under a claim of title to the land
on the east side, and was a temporary arrangement, then
the plaintiff was entitled to recover. That, if the plaint-
iff has got the legal title, and there has been no adverse
possession under the rule thus given, plaintiff should re-
cover. That, in determining the question of adverse pos-
session, the jury should take into consideration all the sur-
rounding circumstances of the case as developed by the
evidence, what the parties have done, the written agree-

Dhein vs. Beuscher and others.

ment, what that was intended to accomplish, and what light they might throw upon the question.

The jury found the line surveyed in 1885 by Charles Leins to be the true line, and found for the plaintiff, assessing his damages in the sum of $15, and from judgment on the verdict the defendants appealed.

For the appellants there was a brief by *Frisby & Miller*, and oral argument by *J. N. Frisby*. They contended, *inter alia*, that the plaintiff had not the actual possession of the premises when the injury was committed, and therefore cannot maintain trespass. *Gunsolus v. Lormer*, 54 Wis. 630, 633, 634; *Stoltz v. Kretschmar*, 24 id. 283; *Winchester v. Stevens Point*, 58 id. 350; *Bracken v. Preston*, 1 Pin. 597; *Stuyvesant v. Tompkins*, 9 Johns. 60; *Burrell v. Burrell*, 11 Mass. 293; 6 Wait's Act. & Def. 64, 65. His only remedy in such case is an action of ejectment. *Lee v. Simpson*, 29 Wis. 333; 6 Wait's Act. & Def. 64, 65; *Polk v. Henderson*, 9 Yerg. (Tenn.), 310. If two adjacent or coterminous proprietors agree upon and establish a dividing line between their premises, and actually claim and occupy the land on each side of the line continuously for twenty years, such possession will be adverse and confer title by prescription. *Tobey v. Secor*, 60 Wis. 313; *Burrell v. Burrell*, 11 Mass. 297; *Scheible v. Hart*, 12 S. W. Rep. (Ky.), 629; *Blessingame v. Davis*, 68 Tex. 595; *Harne v. Smith*, 79 id. 310; *Cleveland v. Obenchain*, 107 Ind. 591; *Riggs v. Riley*, 113 id. 208; *Hoffman v. White*, 90 Ala. 354; *Fisher v. Bennehoff*, 121 Ill. 426. The possession of the original disseisor and his heirs or his successive grantees may be tacked together. *St. Paul v. C., M. & St. P. R. Co.* 45 Minn. 387; 6 Wait's Act. & Def. 455; *Atwood v. Canrike*, 86 Mich. 99; *Greene v. Anglemire*, 77 id. 168; *Riggs v. Riley*, 113 Ind. 208.

For the respondent the cause was submitted on the brief of *H. W. Sawyer*. He argued, among other things, that

the possession taken by each successive holder from his grantor was restricted to the premises granted, and in no wise covered the strip in question. *Stevens v. Brooks*, 24 Wis. 326; *Sydnor v. Palmer*, 29 id. 252; *McEvoy v. Loyd*, 31 id. 142; *Pepper v. O'Dowd*, 39 id. 548; *Furlong v. Garrett*, 44 id. 111. Had any former owner of defendants' land held possession of the disputed strip of land for twenty years or over, and thereafter deeded his other lands without including it, and quit possession, the seisin of plaintiff would be thereby restored and the right to claim title to it by adverse possession forfeited. *Graeven v. Dieves*, 68 Wis. 317; *Dietz v. Mission T. Co.* 95 Cal. 92; *Mayor of New York v. Law*, 125 N. Y. 380. Claim of title and supposition of having title are not synonymous terms. One may suppose his land extends to a certain fence and hold possession under that supposition, yet if he is mistaken in the true line and intends to claim only what is actually his own, such possession is not adverse and neither party is estopped from claiming the true line. *Hartung v. Witte*, 59 Wis. 299; *Knowlton v. Smith*, 36 Mo. 507; *Liverpool Wharf v. Prescott*, 7 Allen, 494; Tyler, Bound. 333; *Brown v. Cockerell*, 33 Ala. 38. The mere entry of defendant over the true line did not deprive plaintiff of possession nor give him notice that she claimed to own or possess it. *Austin v. Holt*, 32 Wis. 490; *Sydnor v. Palmer*, 29 id. 226. To acquire possession of property, corporeal possession must be accompanied with an intent to possess as owner. Bouv. Law Dict. 352. If defendant's acts of trespass deprived plaintiff of possession and gave it to the defendant, the plaintiff's acts in peaceably re-entering and building the fence upon the true line deprived her of possession and restored it to him. *Warner v. Fountain*, 28 Wis. 405; *Toomey v. Kay*, 62 id. 104.

PINNEY, J. The question whether the strip of land in dispute had been held adversely by the defendant and those

Dhein vs. Beuscher and others.

through whom she claims in privity with her in respect to it, so that she obtained thereby a title to it, is the vital question in this case, for, if not adversely held, the possession or occupation of it by the defendant must be deemed to have been under or in subordination to the plaintiff's title. *Sydnor v. Palmer*, 29 Wis. 252. The proof shows beyond controversy that this strip is a part of the S. W. ¼ of the N. W. ¼ of section 16, which has been described and conveyed as such in all the conveyances from the state to the plaintiff's grantors, under which he claims. In like manner the forty-acre tract immediately adjoining it on the east has been described and conveyed to the defendant *Sarah Beuscher* and her grantors, immediate and remote, as the S. E. ¼ of the N. W. ¼ of the same section, and in none of the deeds through which she claims was there any description including the strip in dispute or any part of it. The fence up to which the defendant asserts claim of title was built at a very early day, and had been repaired by the parties who had owned the lands from time to time, each repairing a particular half of it, is not coincident with the true line between the estates, is not built on a right line, but is curved and irregular; and, though it is said that there were one or two surveys of the line a great many years ago, which substantially conformed to the line of the fence, the evidence in relation to them is vague and unsatisfactory, and there is no evidence to show whether the fence was built or designed as a line fence between the two tracts, nor is there any evidence to show that it was ever agreed on as such, though there was, it is said, an oral agreement that each owner should repair his half. The plaintiff did not occupy his lands adjoining the fence, except for pasturage a part of the time, until in recent years; but the defendant and her grantors, immediate and remote, had for more than thirty years cultivated the lands on their side up to the fence. The evidence does not show that they at any

time made any open or specific claim of title to this strip, or that the true location of the line ever became the subject of consideration, until the agreement of May 11, 1885, was made in respect to it; and this was followed by the survey made by Mr. Leins in May, 1886, when the plaintiff built about eight rods of his part of the fence upon the new line, and ever afterwards maintained it until it was torn down by the defendants, with the remainder of the fence on his part of the line, which he built in the spring of 1891, so far as the evidence shows, without objection on the part of the defendants or any one else.

It is clear from the evidence that the defendant has not occupied the strip adversely long enough to gain title to it as by prescription, nor did any one of either of her grantors, immediate or remote, hold it for the period of twenty years, adversely or otherwise. The several conveyances under which she claims title do not include or describe it, and wholly fail to show any privity between her and them in relation to it which would entitle her to tack their possession to hers in order to make out the necessary twenty years' adverse possession. The cases on this subject in this court are clear, and settle beyond question that the defendants' claim of title by adverse possession cannot prevail. In *Graeven v. Dicves*, 68 Wis. 317, 321, Cole, C. J., quotes the language of Dixon, C. J., in *Sydnor v. Palmer*, 29 Wis. 252, that " evidence of adverse possession is always to be construed strictly, and every presumption is to be made in favor of the true owner. Such possession is not to be made out by inference, but by clear and positive proof." And Cole, C. J., adds: " The presumption is that the plaintiff entered under his deed. The possession given him by his grantor was only coextensive with his title, and was restricted to the premises granted. There are doubtless instances where the successive possessions of different occupants have been regarded as a single continued

possession, but we do not see how that can be held as to the excess here, for the grant is limited to the west twenty-five feet, and conveys nothing beyond that. Upon what principle, then, under such a grant, can the plaintiff claim that he acquired some right to a strip outside of the premises described in the deed? We see nothing in the case which will warrant such a claim. When Kriege [plaintiff's grantor] quit the possession of the disputed strip, the seisin of the true owner was restored, and an entry afterwards by the plaintiff upon such strip constitutes a new disseisin; but under his deed he can claim no right to that piece of land, founded upon the adverse possession of his grantor." This is in accordance with *Childs v. Nelson*, 69 Wis. 125, 135, and many cases there cited, and *Fairfield v. Barrette*, 73 Wis. 463, 468, and *Sheppard v. Wilmott*, 79 Wis. 15, 19, 20. In *Pioneer Wood Pulp Co. v. Chandos*, 78 Wis. 526, 532, the cases above cited which had preceded it were distinguished from that case by the fact that Rablin did not abandon possession, but continued his adverse holding until the premises adversely held by him were sold on execution and conveyed by apt description to the claimant.

It was, however, claimed by the defendants' counsel that the case falls within the rule laid down in *Tobey v. Secor*, 60 Wis. 310, as to cases where owners of adjacent tracts had agreed upon a dividing line between their lands, and had actually claimed and occupied the land up to such line on each side continuously for twenty years, and that, therefore, the possession of the defendant was adverse, and created title in her to this strip by prescription. Whether this defense was made out by the evidence, as well as the general claim of title by adverse possession for twenty years, was submitted to the jury under proper instructions, sufficiently favorable to the defendants. The charge of the circuit judge contained all that was necessary to be said on these points. It was submitted to them as " the first and

most important question" for them to find, "Was this line,— this old rail fence,— was that established as the true line between the parties, or was it as a matter of convenience in an early day when the ground was covered with timber, and when they were not, perhaps, as particular? Was it a temporary arrangement until they could afterwards determine the line? It must be under a claim of title. There must be some evidence that the parties agreed upon the old fence as the true line; or did each occupy up to the old fence, claiming title?" These propositions were again repeated, and stated with more particularity, if possible. The claim of adverse possession, and whether there had been any agreement to the old fence as a line, and subsequent possession and claim had been in accordance with that line, were questions of fact to be found by the jury under the instructions of the court; and the jury found them against the defendants. This finding is sustained by competent evidence.

The rule as to what must be shown to make out the defense founded on an agreed line and subsequent possession and claim of title in accordance with it, is fully stated in *Fairfield v. Barrette*, 73 Wis. 468, and cases there cited, and need not be restated, as the finding of the jury must be regarded as conclusive on this point. The possession required by the statute to constitute the twenty years bar must be under claim of title in order to be adverse. This has been held in the many cases decided on the subject by this court. *Schwallback v. C., M. & St. P. R. Co.* 69 Wis. 298; *Hacker v. Horlemus*, 74 Wis. 21, 24, 25. Mere possession is not enough. "Any one in possession, with no claim to the land whatever, must, in presumption of law, be in possession in amity with and in subservience to the legal title." *Harvey v. Tyler*, 2 Wall. 349. "The whole inquiry is reduced to the fact of entering and the intention to *usurp possession*." *Probst v. Presbyterian Church*, 129 U. S. 191,

192; *Brown v. Cockerell*, 33 Ala. 38.   And the circuit court rightly instructed the jury accordingly.

·The second and third requests on the part of the defendants to charge were properly refused, because the general charge embraced all that was material and proper for the guidance of the jury on the subjects referred to, and the written agreement was left for the consideration of the jury, with all the other facts and circumstances to aid the jury in arriving at a conclusion.   The fourth request[1] was improper, in view of the evidence and the rulings of this court above referred to, there being no evidence that would justify the tacking of the possession of the defendant's grantors to her possession, in order to make out the bar of twenty years.   And the fifth request[1] is obviously incorrect, in view of the evidence, for the fact alone that the defendant was actually and lawfully· in possession when the fence was built would not justify the defendants in taking it down and removing it from the land; and was liable to mislead the jury, in view of the fact that, if the plaintiff

---

[1] The fourth and fifth instructions requested by the defendants were as follows: "4. If you find from the evidence that Philip Beuscher, Jr., and his predecessors in ownership, Jacob Stauer, David Klumb, and *Philip Beuscher, Sr.*, have had adverse possession of the land where this new fence was built by the plaintiff, continuously up to the old line, under a claim of ownership for twenty years and upwards, prior to the time when said new fence was erected, this would be of itself an absolute title to the land by prescription in Philip Beuscher, Jr., against the plaintiff and every one else.   If you find these facts to be true, then I charge you that after twenty years adverse possession of said land by Philip Beuscher, Jr., and his grantors, he could and did convey a good title to said land to his grantee, *Sarah Beuscher*, and that a mere survey of the new line, although participated in by Philip Beuscher, Jr., after twenty years adverse possession expired, did not invalidate his said title nor transfer the title to this strip of land to the plaintiff.   5. If you find from the evidence that *Sarah Beuscher* was actually and lawfully in the possession of the land when this new fence mentioned was built, then she had a legal right to remove or cause it to be removed from said land without being liable to an action of trespass."— REP.

or his grantors had not lost the title to this strip of land, which they obtained and held by deed, by reason of any of the claims of the defendant, then he had an undoubted right to enter upon it in a peaceable manner and build his part of the fence, under the agreement, on the real line between the tracts, although the defendant was in the actual occupancy of the strip. Her possession is deemed in such case to be in subordination to his legal title. There is nothing to show that any opposition or objection was made to the plaintiff's going on the premises and building the fence. He had built about eight rods of the fence five years before, and had been in possession of that part of the strip ever since. When he completed his fence he had inclosed as his own land all that part of the strip along the share of the fence assigned to him to build. He had both title and possession, and the latter by peaceable and lawful entry. This is established by the verdict. "A remedy of the same kind as by recaption in the case of personal property is also given to the owner for injuries to real property, which is by entry on lands and tenements when another person, without any right, has taken possession thereof; but this remedy must be peaceable and without force, and a possession thus acquired is lawful." 3 Bl. Comm. 5; *Sheppard v. Wilmott,* 79 Wis. 15, 18. There can be no doubt but that the entry of the defendants upon the lands of the plaintiff thus inclosed, and taking down and removing not only the fence then recently built, but that which he had built and maintained for five years previously, was a trespass for which the plaintiff might maintain an action. At the time the trespass was committed, therefore, the plaintiff was lawfully seised and in possession of the premises, and had a right to maintain this action for the trespasses so committed by the defendants.

Some question was made in respect to rulings upon the admission of evidence, but the objections taken do not seem

to require particular notice. Upon the whole record we are of the opinion that the judgment of the circuit court is correct and should be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.