THE PIONEER WOOD PULP COMPANY, Respondent, vs. CHAN-
DOS, Administrator, Appellant.

*December 20, 1890 — January 13, 1891.*

*Right to maintain dam: Prescription: Pleading: Evidence: Adverse en-
try: Navigable river: Presumption that occupation is permissive:
Interruption of possession: Extent.*

1. In an action to establish the plaintiff's right to maintain a dam across
the main channel of the Wisconsin river, from the eastern shore,
owned by the plaintiff, to an island which with the western shore
belonged to the defendant, allegations of the complaint that those
under whom the plaintiff claims and has title, for more than twenty
years immediately succeeding the year 1847, to wit, for forty years
thereafter, had continuously and uninterruptedly maintained said
dam, abutting the same on said island at the same point, with the
full knowledge of those claiming adverse interests in said island
and western shore, and against the interests of said claimants or
owners, under a claim of right so to do, are *held* sufficient to give
the defendant notice that title by prescription would be relied upon.

2. The construction of the dam abutting on the island, and its mainte-
nance as alleged, are evidence that the entry was adverse.

3. From the fact that the dam was across a navigable river it cannot be
inferred that the occupation and possession were merely permissive
so far as the defendant was concerned.

4. A change in the slide of the dam, to secure greater safety in running
lumber, made by the Wisconsin River Improvement Company with
the consent of the persons in possession of the dam, and in subordi-
nation to their title, was not an interruption of the continuity of
the adverse possession.

5. *Graeven v. Dieves,* 68 Wis. 320; *Childs v. Nelson,* 69 id. 125; and
*Fairfield v. Barrette,* 73 id. 464 (as to the extent of adverse posses-
sion under conveyances), distinguished.

APPEAL from the Circuit Court for *Waukesha* County.
Action to have the plaintiff's right to build and main-
tain a certain dam established, and to restrain the defend-
ant from interfering with the rebuilding and restoration of
a portion thereof which had been destroyed by her. An
order granting a preliminary injunction was affirmed on a

former appeal. 70 Wis. 476. The trial of the action resulted in findings and a judgment in favor of the plaintiff. The facts found will sufficiently appear from the opinion. The defendant appealed from the judgment, but having died pending the appeal, her administrator was substituted as defendant and appellant.

For the appellant there was a brief by *David S. Ordway,* and oral argument by *Mr. Ordway* and *Geo. R. Gardner.*

*Geo. L. Williams,* for the respondent.

COLE, C. J. In considering this case one should not lose sight of the fact that it is an equitable action, and that mere technical legal objections must yield to substantial equitable rights. The plaintiff, and those under whom it claims, have for nearly forty years been in possession of the premises in dispute, have built and repaired the dam frequently, have made valuable improvements, and invested large sums of money in utilizing a water-power created by the dam, without any objection or warning therefrom by the defendant or by those under whom she claimed title. These facts constitute a very strong ground for equitable relief if it can be given consistently with settled principles of law. Laches or delay in asserting or enforcing a right, while a party has knowledge of the facts, will often operate to bar a remedy which is discretionary with a court of equity to grant or withhold.

When this case was before the court on the appeal from the order granting a preliminary injunction, it was said by Mr. Justice TAYLOR in the opinion (70 Wis. 480–1) that upon the facts stated in the complaint the plaintiff had fair grounds for claiming that it had the right to maintain its dam in the place where it had been maintained for more than twenty years before it was destroyed by the defendant, upon two grounds: (1) Under the grant of the legislature in 1847, as a successor to the rights of Miner & Clinton,

the donees in such grant; and (2) under the statute of limitations.   On the final trial and hearing of the cause upon the merits, the learned circuit court found in favor of the plaintiff's claim upon both these grounds, and granted a perpetual injunction restraining the defendant from interfering with its rights as therein defined.   We shall not attempt to determine the rights of the plaintiff upon the first ground, but shall rest our decision upon the second, namely, adverse possession for more than twenty years, without regard to the rights which it may have acquired under the acts of the legislature.

We think the plaintiff's claim, that it has a right to maintain the dam in question at the height and in the manner it had maintained it, is clearly established by prescription. The learned counsel for the defendant intimates that the right to maintain the dam acquired by prescription is not distinctly relied on in the complaint, and therefore that the defendant should not now be forced to meet that issue. But, that the complaint does rely upon adverse possession as one ground of relief is apparent from this averment alone: "and the plaintiff further alleges that those under whom it claims and has title to said premises, water-power, and dam, for more than twenty years immediately succeeding the year of 1847, to wit, for forty years thereafter, continuously and uninterruptedly kept up and maintained said dam across the main channel of said river, abutting the same on said 'Nine-Acre Island' at the same point, and uninterruptedly flooded, during all said period, the lands above, as fully and to as great an extent as they were being flooded when the said dam was destroyed; that said dam was maintained and was abutted upon said island or shore during all said period, and continuously and uninterruptedly for upwards of twenty years, with the full knowledge of those claiming adverse interests in said island and westerly shore, and against the interests of such claimants or owners, under

a claim of right so to do, and not otherwise." This, it appears to us, states with sufficient clearness the fact that the plaintiff relied upon title by prescription, though it is true that this is not its whole claim. But it is enough to give the defendant notice that adverse possession for twenty years would be relied on, and the defendant was doubtless as fully prepared as she ever would be to meet that issue.

Among other things, the court below found in substance, upon the evidence, that the dam had been built, kept up, and maintained continuously by the various owners for more than twenty years, and that the land was flooded and the water diverted to the east channel, with a full knowledge of those claiming adverse interests to the westerly shore and island, and against the interests of such owners, under a claim of right so to do. That there is abundant testimony to support this finding cannot well be denied. It is said that there is no evidence that the entry was hostile or adverse, so as to set the statute running as against the real owner. We cannot adopt that view of the testimony. Here the dam, as built and kept up, abutted on the island. There was a physical intrusion upon, and an actual occupation of, the premises by a visible, tangible structure, which gave notice to all the world of the use to which it was to be put. The acts of possession were as open, visible, and notorious as they possibly could be. The character of the possession was likewise, from its very nature, exclusive, and necessarily implied an ouster of the true owner, under a claim of right. That the occupancy was under a claim of title is clearly and conclusively established by every fact and circumstance in the case. It is quite immaterial upon what the claim of title was founded, or whether it was valid in law or not. It certainly was asserted on all occasions, and the dam was used as the property of the occupant. The intent to hold adversely could

not, in any case, be shown more clearly than from the acts and declarations in this, which were harmonious and consistent.

It may be laid down as an indisputable general rule of law that, to constitute an effectual adverse possession, two things must concur: (1) An ouster of the real owner, followed by an actual possession by the adverse claimant; and (2) an intention on the part of the latter to so oust the owner and possess for himself the property. Sedgw. & W. Tr. Title Land, § 729. "That a grant will be presumed, by analogy to the statute of limitations, after twenty years peaceable and uninterrupted adverse enjoyment, is too well settled," says Chief Justice DIXON, "to admit of controversy." *Rooker v. Perkins*, 14 Wis. 82. This possession, by itself, for the statutory period, raises the presumption that the party in possession is the actual owner, or that such owner surrendered or abandoned his claim to the premises, or he would have asserted it within the requisite period, to save his rights. An undisturbed possession of twenty years is evidence of an estate in fee, if no other title appear, and upon such evidence plaintiff may recover in ejectment. Says Lord MANSFIELD, in *Denn v. Barnard*, Cowp. 595, if no other title appears, a clear possession of twenty years is evidence of a fee, and not that the plaintiff held under a lease. See, also, *Jackson v. Wheat*, 18 Johns. 41; *Fanning v. Wilcox*, 3 Day, 258; *Arbuckle v. Ward*, 29 Vt. 44; *Watkins v. Peck*, 13 N. H. 360.

We do not well see how adverse possession of real property could be more clearly shown in any case than it was in this. It was certainly an actual and continuous occupation under a claim of title exclusive of any other right, if acts and language mean anything. The proof shows that the use was adverse and uninterrupted, and known to the owners of the river and island and the lots on the west shore, or should have been known to them, and was under

a claim of title exclusive of any other right, fully amounting to adverse possession as defined by sec. 4213, R. S.

Some stress is laid upon the fact that the dam or a portion of it was across a navigable stream, and it is sought to draw the inference from this fact that the occupation and possession must have been merely permissive. As to the public right of navigation, the occupation may have been permissive or in subordination to that right, but it was not permissive so far as the defendant or the persons under whom she claims title were concerned. They might have contested the right of the various owners to maintain this dam upon their lands, before the right to maintain it had been acquired by prescription; but they did not do so within the requisite period to save their rights and before the bar of the statute of limitations had become complete.

There was an attempt made to show that in 1865 or 1866 there was a verbal agreement entered into between John Rablin and Orestes Garrison, that the former might abut the dam on Nine-Acre island, in consideration of certain rights and privileges which he gave Garrison to maintain booms and piers at the head of "Big Island," so called. But the evidence as to any such agreement having been made was conflicting, and the court negatived the fact that it was ever made, if not distinctly, inferentially, by other findings. This is conclusive upon the point in this court, and disposes of the claim that Rablin occupied under a license or permission from Garrison.

It is further said the interference of the Wisconsin River Improvement Company exercised control over the dam and interrupted the continuity of the possession. The evidence shows that in 1868 and 1869, and also in 1881, there was a change made in the slide of the dam, so as to secure greater safety in running lumber, but this work was done with the consent of Rablin or of parties then in possession, and in subordination to their title. The improvement com-

The Pioneer Wood Pulp Co. vs. Chandos.

pany did not assume control over the dam, nor did Rablin abandon the possession thereof. He continued his occupancy of the dam and water-power upon this occasion, as upon all others, until his interest in the mill property was sold upon the execution issued on the judgment against him, always asserting his ownership; and those claims of title were not questioned by the improvement company or by any one interested in the islands or property on the banks of the river. So, it is a mistake to say that there was an interruption in the adverse use and enjoyment of the dam and easement, which would affect the running of the statute of limitations. *Haag v. Delorme,* 30 Wis. 591.

It seems unnecessary to point out the distinction between this case and *Graeven v. Dieves,* 68 Wis. 320; *Childs v. Nelson,* 69 Wis. 125, and *Fairfield v. Barrette,* 73 Wis. 464,— where parties attempt to claim the benefit of adverse possession in lands outside the limits conveyed in deeds. It was held that the extent of adverse possession under the conveyances was measured by the premises actually conveyed, and should not operate beyond these limits. This has no reference to adverse possession for twenty years, but only refers to ten years adverse possession under a written instrument.

So, in any view which we have been able to take of this case, we think the plaintiff's right to maintain the dam is clearly established by prescription.

*By the Court.*— The judgment of the circuit court is affirmed.