Allis vs. Field.

ALLIS, Respondent, vs. FIELD, Appellant.

*December 19, 1894 — February 5, 1895.*

89 327
94 412
89 327
a106 507
f106 511

*Adverse possession: Evidence: Interruption: Tacking possession of successive occupants.*

1. Evidence of adverse possession of land from *about* May 1, 1866, to *about* May 1, 1886, is not sufficient to show such possession for the statutory period of twenty years.

2. Any interruption or discontinuance of adverse possession, before it has continued for the statutory period, restores the seisin and possession to the rightful owner.

3. To create such privity as will enable an occupant of land to tack his possession to that of a prior occupant, so as to make it a continuous adverse possession for the statutory period, there need not be a conveyance in writing, but it must clearly appear that the particular premises in dispute were in fact embraced in the transfer.

4. The owners of certain land, who had occupied also an adjoining strip, leased to one G. and afterwards conveyed to the defendant, to whom G. attorned. The deed to defendant did not cover the strip of land mentioned, but the grantor subsequently quitclaimed it to him. There was evidence tending to show that the lease to G. was in writing, but it was not produced, and it did not appear that the leasing extended to said strip. *Held,* that defendant could not tack G.'s possession of the strip to that of his grantors.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Affirmed.*

This was an action to recover so much of lots 1 and 2 in block 107 in the Seventh ward of the city of Milwaukee as lies east of a line drawn across said lots, beginning at the southwest corner of the north and south fence across said lot 2 in the rear of the house formerly occupied by Emily S. Brown, on said lot; thence running north, along said fence and parallel to the west line of said lots 1 and 2, to Martin street. The answer consists of a general denial, and sets up title by adverse entry and possession of the demanded

premises, under claim of title, for over twenty years prior to the commencement of the action.

The plaintiff derived her title through sundry mesne conveyances of the west eighty feet of said lots. The defendant was shown upon the trial to be the owner of the whole of said lots except the west eighty feet, both deriving their title under one McCarthy. The controversy is as to the correct location of the boundary line between the respective parcels of the parties, and the strip in dispute across lots 1 and 2 is bounded as follows: Beginning at the south end of the north and south fence running across said lot 2 in the rear of the house formerly occupied by Emily S. Brown, at a distance 4.75 feet west of the southwest corner of said west eighty feet of said lot 2; thence running in a northerly direction along said fence, to a point 2.50 feet north of the south line of lot 1, and 6.10 feet west of the east line of the west eighty feet of said lot 1; thence in a northerly direction, to a point on the north line of lot 1, about 6.50 feet west of the northeast corner of the west eighty feet of said lot.

On the 25th of August, 1856, Edward P. Allis, having acquired title to the whole of lots 1 and 2, conveyed the west eighty feet thereof to Charles Schley; and it appeared that the title of Charles Schley thereto, on May 12, 1860, became vested in Charles Stebbins, who conveyed the same, February 12, 1873, to the plaintiff, *Margaret W. Allis.* On September 26, 1856, Edward P. Allis and wife conveyed the balance of said lots 1 and 2 to Van Schaick and Gunnison. Gunnison quitclaimed to Van Schaick his undivided half; and the latter, February 11, 1860, conveyed by metes and bounds all of lots 1 and 2, except the west eighty feet thereof, to one Ludington; and the latter, on April 7, 1863, conveyed the same to one Price, and March 9, 1866, Price conveyed to James S. Brown the same premises, by the same description. On the 7th of August, 1886, Emily S., James P., and

Clarence S. Brown, the widow and heirs at law of James S. Brown, deceased, conveyed the same, by the same description, to the defendant, *Field*, and on the 5th of October, 1889, quitclaimed to him the strip of land in controversy, by metes and bounds.

The true line between the premises of the plaintiff and defendant is on the east side of the strip in dispute, which had been inclosed by the fence with the premises now held by the defendant ever since prior to the conveyance to Brown; and it was claimed that this strip had been adversely held by Brown and those claiming under him, including the defendant, ever since Brown entered under his deed from Price. It is conceded that the possession of Brown, if adverse, did not continue for the full period of twenty years; and, in order to avail himself of his defense of the statute of limitations, it was necessary that the defendant should be able to tack to Brown's alleged adverse possession an adverse possession of the strip in dispute on the part of his heirs and successors in title. The evidence was that Brown occupied the premises with which the strip was inclosed, as his homestead, ever since *about* May 1, or May, 1866. He died in the spring of 1878, leaving a widow, Emily S. Brown, and two sons, Clarence S. and James P. Brown; and they continued to occupy it until a Mr. Ellsworth came there as a tenant, though one of the sons was in the house at the time. The premises were afterwards leased to one George Gibbs by the widow and sons, and he occupied as a tenant until the conveyance to the defendant, August 7, 1886. The defendant's evidence tends to show that the lease was in writing, and one of the sons of Brown testified that it was his recollection that Gibbs came in *about* May 1, 1886, "but I may be mistaken. He came in for a year. After the conveyance to the defendant, he collected the rent from Gibbs." James P. Brown testified that "we moved out of there *in April*, 1886, with our goods and chat-

tels, and it was rented to Gibbs *later on*." There was no evidence to show how long Ellsworth held as tenant, nor whether his lease was verbal or written, nor was there any evidence to show the terms of either of the leases, or whether the demise in either instance included the strip in dispute. The evidence showed that it was first discovered that the fence was not on the true line about the time of the deed to the defendant, in August, 1886.

The court found the plaintiff to be the owner in fee of the strip and entitled to the possession thereof; that the defendant unlawfully withheld it; and she had judgment for possession of the same, from which the defendant appealed.

For the appellant there was a brief signed by *David S. Ordway*, of counsel, and oral argument by *Mr. Ordway* and *Mr. E. Mariner*. They contended, *inter alia*, that the case differs from those where one extends his fence upon the land of an adjoining owner, intending only to assert a claim to the true line when ascertained. In such case the possessor recognizes the title of his neighbor to the land defined by the true boundary, and hence his inclosure of a part of the land that does not belong to him is not hostile. Here the defendant and his predecessors in the title bought with reference to the inclosure, and all the time claimed all the land embraced therein, and recognized no other right. The fact that they supposed they owned all the land inclosed does not render their claim any the less hostile, but rather strengthens it. *Hand v. Swann*, 1 Tex. Civ. App. 241; *Hitchings v. Morrison*, 72 Me. 331; *Ricker v. Hibbard*, 73 id. 105; *Martin v. Me. Cent. R. Co.* 83 id. 103; Angell, Lim. (6th ed.), 404; Wood, Lim. 548, § 263; *French v. Pearce*, 8 Conn. 445; *Prop'rs of Enfield v. Day*, 7 N. H. 457; *Hale v. Glidden*, 10 id. 397; *McKinny v. Kenny*, 1 A. K. Marsh. 460; *Smith v. Morrow*, 5 Litt. 210; *Hunter v. Chrisman*, 6 B. Mon. 463; *Walbrunn v. Ballen*, 68 Mo. 164; *Cole v. Parker*, 70 id. 372; *Alexander v. Wheeler*, 69 Ala. 340; *Seymour, Sabin & Co. v.*

---

---

*Carli,* 31 Minn. 81; *Vandall v. St. Martin,* 42 id. 163; *Brown v. Morgan,* 44 id. 432; *Ramsey v. Glenny,* 45 id. 401; *Tex v. Pflug,* 24 Neb. 667; *Levy v. Yerga,* 25 Neb. 764; *Metcalfe v. McCutchen,* 60 Miss. 145; *Brown v. Anderson,* 90 Ind. 93; *Brown v. Bridges,* 31 Iowa, 138; *Meyer v. Weigman,* 45 id. 582; *Tracy v. Newton,* 57 id. 210; *Davis v. Curtis,* 68 id. 66; *Doolittle v. Bailey,* 85 id. 398; *Burrell v. Burrell,* 11 Mass. 298; *Crary v. Goodman,* 22 N. Y. 170; *Barnes v. Light,* 116 id. 34; *Baker v. Oakwood,* 123 id. 16; *Greene v. Couse,* 127 id. 386. There was sufficient competent evidence of the adverse entry and claim of title exclusive of any other right. *Link v. Doerfer,* 42 Wis. 391; *Pepper v. O'Dowd,* 39 id. 538; *Furlong v. Garrett,* 44 id. 119; *Bartlett v. Secor,* 56 id. 520; *Allen v. Allen,* 58 id. 202; *Hacker v. Horlemus,* 69 id. 280; *Shearer v. Middleton,* 88 Mich. 622; *Grube v. Wells,* 34 Iowa, 151; *Barnes v. Light,* 116 N. Y. 34; *Costello v. Edson,* 44 Minn. 138; *Brown v. Morgan,* id. 432; *Glencoe v. Wadsworth,* 48 id. 402; *Dean v. Goddard,* 55 id. 290; *Brown v. Leete,* 6 Sawyer, 332; Buswell, Lim. §§ 242–250, and notes; Tiedeman, Real Prop. § 699; Sedgwick & W. Tr. Tit. Land (2d ed.), §§ 749, 758; *Grim v. Murphy,* 110 Ill. 271.

*F. M. Hoyt,* attorney, and *Joshua Stark,* of counsel, for the respondent, argued, among other things, that the possession of Ellsworth and Gibbs can be tacked to, or regarded as, that of the Browns only upon clear proof that Ellsworth and Gibbs took and held possession of this disputed strip under privity of estate with the Browns, that is, under a lease or leases demising this disputed strip in terms to these tenants. The terms of the lease do not appear. It is not to be presumed that the disputed strip was covered by them. On the contrary, it is fairly to be presumed that the Browns described the demised premises in these leases as they described them in their deed to *Field,* the defendant, according to their legal title. If this be true, then the surrender of the premises by the Browns to their tenants was an

Allis vs. Field.

abandonment of the disputed strip for the period of the tenancy, and the continuity of the possession for the purposes of the statute of limitations was broken as effectually as it would have been by a sale by a deed covering only the land to which they had title, and a surrender by them of the possession, and entry by the purchaser. *Graeven v. Dieves,* 68 Wis. 317; *Ablard v. Fitzgerald,* 87 id. 516. Hostile possession must be continuous and notorious. It cannot bo made out from inference, as the presumption is in favor of the true owner. *Neilson v. Grignon,* 85 Wis. 550, 553; *Thompson v. Felton,* 54 Cal. 547; *Potts v. Coleman,* 67 Ala. 221; *Sharon v. Tucker,* 144 U. S. 533; *Ayers v. Reidel,* 84 Wis. 276, 283; *Yelverton v. Steele,* 40 Mich. 538; *Sparrow v. Hovey,* 44 id. 63; *Paldi v. Paldi,* 95 id. 410; *Dhein v. Beuscher,* 83 Wis. 316. In order to get title by adverse possession up to a fence which is beyond the true line, there must be an intention to go beyond the true line if it appears to be short of the fence line. *Hacker v. Horlemus,* 69 Wis. 280; *Preble v. Me. Cent. R. Co.* 85 Me. 260; *Sweny v. Burns,* 74 Iowa, 701; *Dow v. McKenney,* 64 Me. 138; *Jacobs v. Moseley,* 91 Mo. 457; *Goldsborough v. Pidduck,* 87 Iowa, 599; *Schad v. Sharp,* 95 Mo. 573; *Grube v. Wells,* 34 Iowa, 148.

PINNEY, J. The evidence wholly fails to satisfactorily show that the alleged adverse possession, originating, as it is claimed, when Brown entered under his deed for the lots in question except the west eighty feet thereof, was continuous for a period of twenty years. Evidence of adverse possession is always to be construed strictly, and every presumption is to be made in favor of the true owner. It is not to be made out by inference, but by clear and positive proof, and one in possession of land to which he has no claim of title is presumed to be in possession in amity with and subservience to the legal title. *Sydnor v. Palmer,* 29

Allis vs. Field.

Wis. 252; *Wilson v. Henry*, 35 Wis. 245; *Hacker v. Horle-mus*, 74 Wis. 21; *Dhein v. Beuscher*, 83 Wis. 325; *Ayers v. Reidel*, 84 Wis. 283; *Neilson v. Grignon*, 85 Wis. 550, 553. The statute (R. S. sec. 4210) provides that "in every action to recover real property or the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law, and the occupation of such premises by another person shall be deemed to have been under and in subordination to the legal title, unless it appears that such premises have been held and possessed adversely to such legal title" for the statutory period of limitation. The party making the defense of adverse possession must overcome this presumption, and must show, not only the adverse character of the possession upon which he relies, but that it has been continuously adverse for the requisite period. The possession of Brown, if adverse, did not continue for twenty years, and the evidence in support of the defense is, we think, insufficient to show that after his death the possession of the strip in dispute was adverse and continuous long enough to make out with his possession the statutory bar. Any interruption or discontinuance of the possession of the wrongdoer, by operation of law restores the seisin and possession of the rightful owner. 1 Am. & Eng. Ency. of Law, 271; *Graeven v. Dieves*, 68 Wis. 317, 320, 321; *Armstrong v. Morrill*, 14 Wall. 146; *Bliss v. Johnson*, 94 N. Y. 235, 242. The evidence is that Brown's possession began *about* May 1, 1866; and after his death, and *about* May 1, 1886, Gibbs came in as a tenant under the widow and heirs. This is not sufficient to show that the statute had run before Gibbs entered. Adverse possession for *about* twenty years will not suffice.

The successive possessions of several distinct occupants of lands, between whom no privity exists, cannot be united to make up the requisite period. While it is not necessary,

Allis vs. Field.

in order to create such privity as will enable a subsequent occupant to tack his possession to that of a prior occupant, that there should be a conveyance in writing, and although such prior possession may be transferred by parol, yet it must clearly appear that the particular premises, as in this case the strip in dispute, were in fact embraced in the deed or transfer, in whatever form it may have been made. No presumption can be indulged in on this subject. This is in accordance with *Graeven v. Dieves*, 68 Wis. 317; *Ablard v. Fitzgerald*, 87 Wis. 516; and cases above cited. In *Graeven v. Dieves, supra,* the failure to include it in the deed appeared on the face of the instrument under which the party claimed. The premises to which Brown acquired title by the deed to him, in all the transfers of the same parcel, had been described in terms that would exclude this strip of land from the operation of such conveyances; and, if the leases to Ellsworth and to Gibbs were in writing, it is probable, perhaps, that the premises leased were described therein in like manner, and as on the assessment or tax rolls. But whether this is so or not is not material. The burden of proof was on the defendant to show, by clear and positive proof, that the adverse possession of the Browns to this strip, if such it was in fact, was transferred to Gibbs. This is in accordance with the strictness of proof required to sustain the defense of adverse possession. The evidence is too ambiguous and uncertain to show that the statutory bar was complete when the lease was made. The evidence of the defendant, to whom Gibbs attorned and paid rent under his lease after the Browns had conveyed to him, we think, justifies the belief that the lease was in writing, and, if so, it would define and limit the possession he acquired from the Browns. He testified that he "should think there was a written lease then in existence between the Browns and Gibbs. I should think I had seen it, but I can't tell now, because I did not give anybody a lease." And, if

there was a lease, he did not know where it was then. There was nothing to show its loss or destruction, or that any search had been made for it; and no evidence was offered of its contents, and it does not appear that the leasing to either Gibbs or Ellsworth extended to the strip in question. We think that the evidence fails to show a right to tack the possession of the Browns to the possession of Gibbs.

The evidence also tends to show that the possession of Brown's heirs was interrupted and discontinued sometime in April, 1886, and before the lease to Gibbs, but how long does not appear, nor is it shown what acts of control or ownership, if any, were exercised over the premises while vacant, so as to continue their possession. And, if the possession of Brown and his heirs was adverse and was interrupted, the seisin of the plaintiff would be restored, and this in the present instance would be fatal to the defense; but upon this question we give no opinion, nor whether the possession of Brown or of his heirs was in fact adverse to the title of the plaintiff.

The evidence does not show by any fair inference that the fence was ever expressly or impliedly agreed on by the owners of the respective estates as the true line between them.

For the reason stated, we have arrived at the conclusion that judgment was rightly given for the plaintiff.

*By the Court.*— The judgment of the superior court is affirmed.