TURNER *v.* ANGUS.

|145 679|
|154 532|

1. BOUNDARIES—ESTABLISHMENT—AGREEMENT OF PARTIES.
   Where there is no disputed boundary at the time of selling a part of a tract, the fact that the vendor points out a line different from that described by the deed as the boundary between the land sold and that remaining will not operate, as against a purchaser of a remaining lot, to convey to the purchaser more land than is covered by his deed.

2. SAME—EVIDENCE—QUESTION FOR JURY.
   In ejectment to determine the true boundary between two tracts of land, evidence examined, and *held*, to make a case for the jury on the proper location of the boundaries of the lots upon the ground.

Error to Kent; Perkins, J. Submitted June 6, 1906. (Docket No. 5.) Decided September 20, 1906.

Ejectment by Henry Turner and another against James A. Angus and another. There was judgment for plaintiffs on a verdict directed by the court, and defendants bring error. Reversed.

*J. T. Preston*, for appellants.

*Smedley & Corwin*, for appellees.

HOOKER, J. The accompanying plat will serve to show the premises in dispute. They are the land between the dotted and the dark lines and running easterly and westerly, in close proximity to each other, between the land marked " Turner " and " Angus," respectively. The action is ejectment, and plaintiffs recovered a verdict for the land between said lines, by direction of the court—and defendants have brought the cause to this court by writ of error.

In 1890 the premises now owned by both parties were included in lots 1 and 2, block 6, of Large's Cable Road

Addition to the city of Grand Rapids, which lots were
the property of Julius Houseman. They were then va-
cant, and in the spring of that year he sold the south half
of said lots to the defendant James S. Angus, on contract,
and built a house for him near a line upon the north
thereof, which Angus testified that Houseman pointed

out, and caused to be marked by two stakes as the north
line of the parcel contracted. The land purchased by
Angus was described as the south half of lots 1 and 2.
He received a deed in 1899. In 1892, Hattie M. Amberg,
sole heir of Houseman, sold the north half of lots 1 and 2
to Adele Fox. In 1893 she conveyed to Sowerby, and he
conveyed to the plaintiffs in 1902. A house was built by

Fox. A controversy arose over the boundary between the parties to this action, and that dispute is before us. There is no question of adverse possession, the two questions to be examined being, *first*, whether plaintiffs are right in their claim as to the true boundary; *second*, whether the boundary was settled by the line pointed out by Houseman. The circuit judge stated that the testimony showed that there was no disputed boundary at the time that Houseman drove stakes or pointed out the line to Angus, and that, therefore, if such line so pointed out was not in fact the correct one, according to the description in the deeds, although found at the time by an actual survey, the law applied sometimes to settlements of disputed boundaries and subsequent occupancy could not apply, and that the statute of frauds would preclude the claim that the parcel in dispute was covered by the deed, not being described, and that nothing short of the period of the statute of limitations could give defendants title by adverse possession. The case of *De Long* v. *Baldwin*, 111 Mich. 466, so conclusively supports this holding that we need not say more about it. See, also, *Olin* v. *Henderson*, 120 Mich. 149.

The remaining question relates to the true boundary of the land, as described. Under their deeds, the parties are entitled to portions of the north and south halves of these lots, respectively; their line being the line between said halves. Defendants claim that the question of location should have been submitted to the jury, as a disputed one; plaintiffs assert that the testimony was conclusive in their favor. The learned circuit judge correctly said that a division of the lots as originally staked into equal parts, would fix the true line, and that under the theory of the defendants the line pointed out by Houseman failed to so divide the lots, and therefore throws no light upon the subject. The plaintiffs offered testimony, showing that the north line of these lots was at a certain place. Without entering into a statement of the testimony, we may say that it was proper and convincing testimony that he found

the correct line of the street, lying to the north of the premises, at two points—one to the east and one to the west of block 6—and our understanding is that there is no testimony that disputes him in this particular. To ascertain the street line at the north of block 6, he ran a line between these points, and found it to coincide, not only with the platted distance from the section line, but also within an inch of the distance at which the street curb was actually laid. The only testimony which is inconsistent with this is that of a man, who, as an employé of the city, fixed the line for laying the curb, and he testified that when he did so there was a stake near that point which was 14 inches north from the straight line referred to. He also testified that there were a number of stakes about there, that he did not know what any of them were, though this looked like an old stake. In the course of his cross-examination he said that he found a stake (as already stated) at (or near) the northwest corner of lot 1, that therefrom, and in a line with each other, extended a line of stakes, both east and west, to the monuments on Diamond and East streets, where the monuments are not in dispute, though the effect of this was to make an angle in the south line of the street at that point, which the plat did not show, that the distance from a straight line between Diamond and East streets and the stake first mentioned was $14\frac{1}{2}$ inches, and that the stakes were disregarded, and when the curb was laid, it was placed in the line as straightened $14\frac{1}{2}$ inches to the south of the stake at the northwest corner of lot 1. The evidence justifies the conclusion that this still left the platted distance within an inch or so. This testimony tends to prove that the true north line of block 6 was shown by the stakes at the northwest corner of lot 1 and those to the eastward. True, these may not have been correct stakes, and perhaps were not original ones, and that they did not mark the true line is perhaps made the more probable from the fact that they show an overplus of land, and make an angle that the plat does not show; but, under the rule that the trial

court recognized, viz., that stakes rather than surveyed line must prevail, a question of fact arose as to whether these stakes marked the original line, and should have gone to the jury. It is obvious that even if this $14\frac{1}{2}$ inches were to be regarded, the plaintiffs must still recover the greater portion of the land in dispute; but as the verdict covers the whole of it, the direction as to a small portion of the land was erroneous, and we are constrained to reverse it.

Judgment reversed, and a new trial ordered.

CARPENTER, C. J., and McALVAY, GRANT, and MOORE, JJ., concurred.