SHELDON *v.* MICHIGAN CENTRAL RAILROAD COMPANY.

1. ADVERSE POSSESSION—TACKING SUCCESSIVE POSSESSION.
   Adjacent owners who occupy successively a portion of a right of way, not fenced in as a part of their property or by the railroad company which has fenced in the remaining portion owned by it, do not have such continuous possession, without including the disputed portion in the several deeds in their chain of title or without agreeing by parol to transfer the possession, as to constitute a continuous adverse possession.

2. SAME.
   Separate successive disseisins cannot be tacked so as to constitute one and a single continuous possession, unless there is privity of estate between the successive parties in possession, each coming in as the transferee of the possessory rights of his predecessor.

3. SAME—CONVEYANCES.
   Where the grantee relies upon his deed to show privity of estate, he cannot have the benefit of the grantor's possession of lands which are not conveyed by the deed.

4. SAME—PRESUMPTIONS—EVIDENCE.
   Evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner.

5. SAME—RAILROADS—RIGHT OF WAY—ABANDONMENT.
   Fencing in slightly over half of its right of way is not evidence of an abandonment of the remaining portion by the railroad company.

6. BOUNDARIES—LINE FENCE—AGREEMENT.
   The doctrine of established boundaries does not apply unless the line is in dispute and the parties in settlement build a fence or determine the boundary pursuant to agreement.

7. ESTOPPEL—BOUNDARIES—ACQUIESCENCE.
   A railroad company which is not guilty of any fraud or other inequitable conduct is not estopped from questioning the title of an adjacent owner who claims a portion of its right of way by adverse possession, without color of title, under the description in his deed.

8. SAME—PLEADING.
   Estoppels which form the foundation of relief asked and tend to defeat a legal title must be alleged.

9. SAME—REAL PROPERTY—IMPROVEMENTS.

   Where the complainant made valuable improvements by erect-
   ing buildings on property which he supposed was his, and no
   value is proved, he should be permitted to remove them with-
   in a reasonable time.

Appeal from Cheboygan; Shepherd, J. Submitted
January 20, 1910. (Docket No. 105.) Decided June 6,
1910.

Bill by Frank R. Sheldon against the Michigan Central
Railroad Company and the Jackson, Lansing & Saginaw
Railroad Company to restrain a trespass upon and to
quiet title to certain land. Defendants filed an answer in
the nature of a cross-bill to quiet title to said land. From
a decree for complainant, defendants appeal. Reversed,
and decree entered for defendants.

   *Benjamin & Quay*, for complainant.

   *Frost & Sprague*, for defendants.

STONE, J. It appears from the pleadings and proofs in
this case that the complainant is the owner of lot 16 in
block 2 in R. Patterson's first addition to the village (now
city) of Cheboygan, county of Cheboygan, excepting,
however, all that part of the above-described piece or par-
cel of land heretofore conveyed by Stanislaus Legault and
wife to the Jackson, Lansing & Saginaw Railroad Com-
pany by deed dated the 18th day of September, 1880. The
defendant Jackson, Lansing & Saginaw Railroad Com-
pany, a corporation, is the owner of a railroad right of
way in a side, or spur, track running from the main line
to what is known as the "McArthur Dock." The de-
fendant, the Michigan Central Railroad Company, is lessee
of the railroad right of way of the Jackson, Lansing &
Saginaw Railroad Company. The Jackson, Lansing &
Saginaw Railroad Company's title to the right of way
across complainant's land is evidenced by two deeds, one
a quitclaim from Robert Patterson and wife, dated Sep-

tember 15, 1880, and recorded April 1, 1885, and the other a warranty deed from Stanislaus Legault and wife, dated September 18, 1880, and recorded April 1, 1885. These deeds grant to the defendant Jackson, Lansing & Saginaw Railroad Company 100 feet in width, 50 feet on each side of the center line of the route of said spur track as the same had been surveyed, laid out, and located upon and across said lot and other lands mentioned in said deeds. The last-named railroad company, about the year 1881, built a fence inclosing a part of this right of way along the entire length of this spur track. Instead, however, of building its fence 50 feet from the center of the railroad track, as surveyed and laid out, it built fences on each side of the spur track, some 25 or 30 feet from the center.

It is the claim of the complainant that the fence on the easterly side of defendants' right of way formed the westerly boundary of his lot, and other lots in the immediate neighborhood. Tracing the title from Stanislaus Legault and wife down to complainant through mesne conveyances, we have the following: A warranty deed from Stanislaus Legault and wife to Gilbert Joslin, dated June 29, 1881, duly recorded, of lot 16 in block 2 in R. Patterson's first addition to the village of Cheboygan according to the plat thereof, except, however, that part of said above-described pieces or parcels of land heretofore conveyed by grantors to the Jackson, Lansing & Saginaw Railroad Company by deed dated the 18th day of September, 1880. A warranty deed from Gilbert Joslin and wife to Polycarp L. Lapres dated October 9, 1884, and duly recorded, containing the same description, together with precisely the same exception as the previous deed. A warranty deed from Polycarp L. Lapres and wife to Samuel C. Bell, dated February 24, 1894, and duly recorded March 12, 1894, containing precisely the same description and exception as the prior deeds. The next and last conveyance is a warranty deed from Samuel C. Bell and wife to Frank R. Sheldon, the complainant herein,

dated May 16, 1904, recorded May 17, 1904, containing the same description and exception as in the prior deeds.

It seems that Gilbert Joslin was the first purchaser to take possession of this property, which he did in 1881; and it appears that the fence above referred to had then been erected. He built a house thereon and remained in possession for a time. One Wedge, a tenant for Polycarp L. Lapres, seems to have built the barn, which was entirely on the disputed strip. Bell, while in possession, built an addition to the house and added a wagon shed to the barn, called by him a "lean-to." The barn, shed, and a part of the kitchen are on the disputed strip of land.

It appears that Bell went into possession in 1889 under a contract to purchase from Lapres, although, as we have seen, he did not obtain his deed until February, 1894. He lived in the house continuously for 11 years from 1889, after which the property appears to have been leased for some 2 years, when it was purchased upon contract by complainant, who went into possession in 1902, and has lived continuously on the lot up to the time of the hearing in this case, although he did not obtain his deed until 1904. Complainant paid $700 for the property.

On or about the 8th of November, 1906, the defendant Michigan Central Railroad Company, by its servants, started to tear down the fence on the westerly side of complainant's alleged land, and commenced to dig post holes on what complainant claims was his own premises easterly from the location of said fence, and 50 feet from the center of the track. Upon request of one of complainant's solicitors, the said defendant railroad desisted from moving the fence, and immediately thereafter complainant filed his bill to quiet his title.

By his bill he claims that the premises were inclosed by a fence, and that he was, at the time of filing the bill, in actual possession of said described premises and that part thereof inclosed by the fence, and that he and his grantors had been in actual, open, notorious, visible, hostile, and

continuous possession thereof for 15 years and upwards. He represents by his bill that the claim of the defendants is a cloud upon the title of complainant, and tends to depreciate the value of the property. He prays that the court may decree that he has a clear, free, and perfect title to the aforesaid premises, including the land up to said fence as heretofore stated, and the defendants have no title or interest in any part thereof; and he prays for a perpetual injunction restraining defendants from setting up or asserting any claim or interest in said premises as then occupied by complainant, including all the land up to said fence.

The defendants, jointly answering, admit that complainant is in possession of said premises, and that part thereof is inclosed by said fence; but they deny that said complainant and his grantors have been in actual, open, notorious, visible, hostile, and continuous possession thereof for 15 years and upwards. They further admit that they claim to own, and have the right to the possession of, the part of the premises then occupied by complainant, and inclosed by said fence, and claim to own the property conveyed to them by the aforesaid conveyance of September, 1880. They deny that complainant has any title to that portion of said premises described in the said deeds, and they assert that complainant has no title to said disputed premises whatever; that is, so much of the fenced portion as is within the lines of defendants' right of way. Defendants also, by way of cross-bill, set up by metes and bounds a description of their said right of way over the premises; assert that they claim to own the same, and that the claims and assertions of the said complainant constitute a cloud upon their title; and they pray that by decree their title may be quieted and the right of possession be adjudged to the defendants.

By a decree bearing date 28th of July, 1909, the circuit judge found that complainant had established by testimony the fact that he and his grantors had had the continuous, hostile, adverse, notorious, and visible possession

of the disputed strip of land up to the fence for more than 15 years before bringing suit, and ordered complainant's title to be quieted.

In the printed brief of complainant appears the following statement:

"The important question in this case is whether or not the complainant has the right to tack his adverse possession of the strip of land in dispute to that of his predecessors and grantors, Samuel C. Bell and Loretta May Bell, husband and wife. It is not disputed that the adverse possession of said Samuel C. Bell did not continue for the full statutory period of 15 years; but, if the possession of the complainant can be tacked to that of his grantors, this would constitute the full time of 15 years, provided, however, that the exception in the deed from Samuel C. Bell and wife to complainant of this right of way did not break the continuity of the possession and did not stop the running of the statute of limitations."

As we understand the position of defendants, they do not dispute the fact that the actual and continuous possession of the disputed strip of land, as held by the complainant and his grantor, Samuel C. Bell, exceeds the term of 15 years, but they contend:

(1) That the acceptance by complainant of the deed, excepting from said lot 16 in block 2 the entire right of way as conveyed to the defendant Jackson, Lansing & Saginaw Railroad Company by Stanislaus Legault and wife, in September, 1880, amounts to a declaration of acquiescence in defendant's title, thereby admitting that his own holding was not adverse.

(2) That as the deed to the complainant did not contain a description of the disputed piece, he has no right to tack to his own possession the possession of his grantor Bell, because there was no privity of estate between the parties as to the said described strip.

It is important to bear in mind that in every conveyance of the several grantors of the complainant, after the deed of right of way was given to the defendant Jackson, Lansing & Saginaw Railroad Company, there was the following exception:

"Except, however, all that part of said above-described piece or parcel of land heretofore conveyed by Stanislaus Legault and wife to the Jackson, Lansing & Saginaw Railroad Company by deed dated the 18th day of September, 1880."

It clearly appears from this record that there is no evidence of any parol permission, or authorization of any kind, given by the grantor Bell to the complainant, to take the place of the said Bell in the wrongful possession which Bell held of the strip of land in controversy in this case. Nor is there any evidence in the record of any parol permission, or authorization of any of the grantors in the deeds hereinbefore referred to, to their grantees, to take the places of their grantors in the wrongful possession of said described strip of land. The record also shows that there was no parol agreement, understanding, permission, or authorization respecting the premises which complainant's grantor had held, or would deliver; and this applies, not only to the strip of land in dispute, but also to that conveyed in the deed. The record shows that complainant took possession. There is not a syllable of any verbal authorization of delivery whatever. He testified as follows:

"I took possession of the premises after I bought from Mr. Bell.

"*Q.* When?

"*A.* Why, just as soon as I bought on contract; just as soon as I got the contract I moved in and took possession of it. I moved in, I think, in 1902, and got the deed of it in 1904.

"*Q.* When you bought the premises, did you inquire how far your lot went?

"*A.* No, sir."

The complainant contends that, under the authority of the case of *Illinois Steel Co.* v. *Budzisz*, 106 Wis. 499 (81 N. W. 1027, 82 N. W. 534, 48 L. R. A. 830, 80 Am. St. Rep. 54), he has the right to begin the running of the statute of limitations from the time his grantor, Bell, took possession in 1889, and to tack his possession upon that of

Bell's. We doubt the applicability of the case cited to the state of facts existing here.

It is not necessary for us to decide whether any oral agreement to surrender a wrongful possession to the successor, so that where the continuous possession exists 15 years, would defeat an action to recover possession by the owner. Not a scintilla of evidence is shown in this record of any parol transfer of Bell's possessory rights to the strip of land in litigation, and what is true as between Bell and the complainant is equally true as to all prior grantors. There was no transfer of any mere possessory right to the strip of land in litigation here, if any existed. No permission or authorization by Bell to Sheldon to take his place in possession of said litigated strip of land appears. The exception in the deed negatives such transfer, permission, or authorization, and the record contains no other testimony of any such transfer, permission, or authorization. Indeed, it may be said that the testimony establishes the very opposite. Bell could not transfer possessory rights of the strip without intending to do so; he could not intend to do so without knowing that he had such possessory rights; and he testified that he did not know whether he occupied any of the railroad company's land, and never thought anything about it. And so complainant could not have acquired Mr. Bell's possessory rights in the strip by parol, or other agreement, bargain, or understanding without having some knowledge of the subject; and his testimony shows that when he bought he had no knowledge that the railroad company owned this strip of land, and consequently he could have had no knowledge of Bell's possessory rights therein.

As we have already said, in buying, complainant did not even inquire as to the extent of the lot he was buying. It being conceded that complainant has not had possession of the disputed strip of land long enough to acquire title thereto by his adverse possession, we are brought to the question whether or not he has the right to tack to his own possession the possession of his grantor, Bell. It

seems to be undoubted that separate successive disseisins cannot be tacked so as to constitute one and a single continuous possession, unless there is privity of estate between the successive parties in possession, each coming in as the transferee of the possessory rights of his predecessor.

It seems to us to be very clear that the complainant cannot rely upon his deed to show privity of estate, because the disputed premises are not mentioned in the deed. Where the grantee relies upon the deed to show privity of estate, he cannot have the benefit of the grantor's possession of lands which are not mentioned in the deed. 1 Am. & Eng. Enc. Law (2d Ed.), p. 845, and cases cited in note 4. The general rule is that possession cannot be tacked to make out title by prescription where the deed under which the last occupant claims title does not include the land in dispute. It must clearly appear in the deed that the particular premises were embraced in the deed, or transfer, in whatever form it may have been made. 1 Cyc. p. 1007, and note.

It was held in the case of *Humes* v. *Bernstein*, 72 Ala. 546, that when a vendor conveys by deed lands particularly designated, or described by metes and bounds, the purchaser acquires title, or color of title, only to the lands within the designated numbers and boundaries; and if he claims adverse possession under color of title of the adjoining lands outside of those numbers and boundaries because his vendor was in possession thereof at the time his conveyance was executed, he must show that the possession thereof was delivered to him as a part of the lands sold and conveyed; otherwise he cannot tack his vendor's prior possession to his own subsequent possession for the purpose of making out a title under the statute of limitations.

In *Erck* v. *Church*, 87 Tenn. 575 (11 S. W. 794, 4 L. R. A. 641), where it appeared that the purchaser, by mistake, inclosed land not conveyed in his deed, and held the land thus inclosed as his own for less than the statutory

period, and then conveyed to B. by a deed containing the description identical with his own deed, and B. went into possession of the whole and held it as his own long enough to make out the period of limitation by tacking his possession to that of A., it was held that the possession of the land inclosed by mistake could not be tacked.

In *Witt* v. *Railway Co.*, 38 Minn. 122 (35 N. W. 862), where A. entered and occupied the land, which consisted of several lots, and the land was subsequently sold for taxes, and still later the owner of the tax title conveyed his interest in some of the lots to A., who subsequently conveyed to B. by a description which recited, "intending to convey only those lots which had been quitclaimed to said parties of the first part, or either of them, by a conveyance of tax titles," it was held that the possession of B. must be referred to the deed, and that as to those lots not included in the tax deed there was not privity between him and A., he merely succeeding to the possession of the lots; but there was no unity of possession under the original hostile entry by A. To the same effect are the following authorities: *Ablard* v. *Fitzgerald*, 87 Wis. 516 (58 N. W. 745); *Allis* v. *Field*, 89 Wis. 327 (62 N. W. 85); *Sheppard* v. *Wilmott*, 79 Wis. 15, 20 (47 N. W. 1054); *Pioneer Wood Pulp Co.* v. *Chandos*, 78 Wis. 526 (47 N. W. 661); *Ryan* v. *Schwartz*, 94 Wis. 403 (69 N. W. 178); *Graeven* v. *Dieves*, 68 Wis. 317 (31 N. W. 914); *Fairfield* v. *Barrette*, 73 Wis. 463, 468 (41 N. W. 624).

The rule is that evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner, and that the plaintiff entered under his deed, and that his possession is only coextensive with his title, and restricted by the premises described in his deed. *Cooper* v. *Ord*, 60 Mo. 420; *Smith* v. *Reich*, 80 Hun (N. Y.), 287 (30 N. Y. Supp. 167). Adverse possession must be continuous, and, when one person seeks to unite his possession to the possession of the prior occupants, the several titles must be connected by purchase or descent.

Without some privity between the successive occupants, the several possessions cannot be tacked together so as to make continuity of possession. In that case the court said:

"If Mary Cordts had been shown to have occupied the land in dispute, Mrs. Reich could not avail herself of that occupation to make up the 20 years necessary to establish an adverse possession, for the reason that the description in her deed excluded the land, and, consequently, she had not acquired Mrs. Cordts' title. A different case would have been presented had the description in that deed included the land in question."

In *Ward* v. *Bartholomew*, 6 Pick. (Mass.) 410, it was held that disseisins do not aid one another in creating a title by possession. Thus, where the disseisor conveys part of the land, and the grantee, under color of the deed, enters upon the whole, the possession of the first disseisor will not avail the grantee in regard to the part not embraced in the deed. *Fell & Throp Co.* v. *Railroad Co.* (N. J.), 20 Atl. 63.

In *Maher* v. *Brown* and *Ely* v. *Same* (heard together), 183 Ill. 575 (56 N. E. 181), E., being the owner of lot 15, his homestead, inclosed therewith a strip of 14 feet, and afterwards conveyed to his wife lot 15, and continued to live there with her. It was held that, he thereafter having no actual possession of the strip, any subsequent possession of his could not be joined to his prior possession to give title by adverse possession to the strip, and, there being no privity of estate between him and her, any possession of hers could not be tacked to his prior possession, to give title to either by adverse possession.

*Messer* v. *Hibernia Savings & Loan Society*, 149 Cal. 122 (84 Pac. 835). This case holds that a claimant of land by adverse possession cannot tack to the time of his possession that of a previous holder, where the land in dispute is not included in the boundaries in the deed from such holder, and cites *Vicksburg, etc., R. Co.* v. *Le Rosen*, 52 La. Ann. 192 (26 South. 854).

161 MICH.—33.

Many more authorities might be cited in support of this doctrine. It has been supposed that the case of *Davock* v. *Nealon*, 58 N. J. Law, 21 (32 Atl. 675), is in conflict with the doctrine hereinbefore set forth; but an examination of the case will show that it is easily distinguished. That is a case where one holding a legal paper title to a piece of land, in inclosing it, includes within the inclosure a piece of adjoining land, and enters into the possession of the entire inclosed tract, and then transfers his paper title to another, who goes into possession of the entire inclosed tract; and it is held in such a case that the grantee may tack his possession.

There is no claim here that this complainant, holding a legal paper title to his lot, inclosed within his inclosure a piece of adjoining land and entered into possession of it. The inclosure or fence in the case we are considering was built by the defendant, the Jackson, Lansing & Saginaw Railroad Company. This defendant had a right to inclose so much of its land as it saw fit. The fact that it only embraced 50 or 60 feet within its inclosure, when it might have embraced 100 feet, is no evidence of an abandonment of that portion not fenced.

"The boundary line must have been, *first*, a disputed boundary; *secondly*, the fence must have been built pursuant to a mutual agreement between the adjoining proprietors to settle such disputed boundary. Unless these elements appear, the doctrine of boundaries cannot apply."

When this fence was built, there was no dispute as to the boundary line between the railroad company's right of way and the adjoining proprietor. Neither has there been any dispute of such true boundary line at any time. Had this fence been built approximately near the line, there would have been some plausibility in the position that it was intended as a line fence; but a difference of 30 or 40 feet shows that the defendants never could have intended it as a line fence. We do not think it can be said that there has been acquiescence in a boundary line here.

Nor can it be said that the fence in question has been located by the parties as the line boundary. As we have already said, the defendant Jackson, Lansing & Saginaw Railroad Company never intended this fence for a line. It inclosed a part of its premises. Hence *Case* v. *Trapp*, 49 Mich. 59 (12 N. W. 908), and *Bird* v. *Stark*, 66 Mich. 654 (33 N. W. 754), are not applicable. The fence was neither located by the authority of the village, nor treated by the parties as a division fence within the holdings of *Wilmarth* v. *Woodcock*, 66 Mich. 331 (33 N. W. 400), and *Beaubien* v. *Kellogg*, 69 Mich. 333 (37 N. W. 691), cited by complainant. The rule applicable to boundary lines is well defined in the following cases: *Cronin* v. *Gore*, 38 Mich. 381; *De Long* v. *Baldwin*, 111 Mich. 469 (69 N. W. 831); *Olin* v. *Henderson*, 120 Mich. 150 (79 N. W. 178); *Turner* v. *Angus*, 145 Mich. 681 (108 N. W. 1100).

But it is further contended by complainant that the doctrine of equitable estoppel should be applied to this case. There is no evidence in this record that the defendants, or either of them, have been guilty of fraud, or have held out any inducement to the complainant, or his grantors, to enter into possession of their property. Even if silence and acquiescence can sometimes estop a party from asserting a claim to real estate, there is no evidence in this case that warrants the application of the rule. The defendants have occupied the railroad track, the deed to complainant asserted their boundary, and the mere fact that they have not fenced in all their holdings does not give complainant a superior equity, in view of the fact that he was bound to look at the description in his deed. Had the deeds to complainant and his grantors contained the disputed strip of land, a different question might arise. One certainly cannot be estopped from asserting a title against a party who has always known of and always recognized it, as complainant did in accepting his deed. *First Nat. Bank of Kalamazoo* v. *McAllister*, 46 Mich. 397 (9 N. W. 446). Here the evidence of title was of record. *Shaw* v. *Cham-*

*bers*, 48 Mich. 355 (12 N. W. 486). The defendants have not been guilty of any fraud in language or conduct which would give the complainant a superior equity. This is not a case where the defendants have stood by and knowingly allowed their land to be sold, without disputing the validity of the sale, for the reason that the sale did not embrace their land. The bill bases the claim of the complainant upon an adverse possession. Hence no claim of an equitable estoppel can be asserted. It was held as early as the case of *Moran* v. *Palmer*, 13 Mich. 368, that estoppels, where they formed the foundation of the relief asked, and are relied upon to defeat a legal title, cannot be proved unless alleged. And the earlier case of *Cicotte* v. *Gagnier*, 2 Mich. 381, is cited in support of the proposition. It will be noted in this case complainant makes no claim of an estoppel. So, in any view of the case, it seems to us that the complainant had the mere naked possession of the land in dispute, without title, or color of title, and the defendants, having the absolute title thereto, might lawfully make peaceable entry thereon and remove the fence, or do any other lawful act. It appears to us that the claim of complainant cannot be maintained; and that he, not having been in adverse possession for the statutory period, must be held to be a mere trespasser upon this disputed strip of land.

The defendants ask for affirmative relief, and that their right and title to the disputed strip be quieted. There is no evidence in this record of the value of the improvements which have been placed upon this disputed strip by the complainant and his grantors. Nor is there any evidence as to how much, if at all, the premises have been enhanced in value by reason of the buildings erected thereon. It seems to us, however, that the complainant and his grantors having been allowed to place these buildings on this disputed strip, probably in the mistaken belief that they owned the same, they should have the right to remove them within a reasonable time. The entire controversy should be settled in this suit. The complainant

has not been in possession for six years. Neither can it be said that he has been in possession for less than six years under color of title. We are of the opinion, however, that he should have the right to remove the buildings from the disputed territory within six months, and upon that condition we will grant the relief prayed for by the defendants in their cross-bill.

The complainant's bill of complaint should be dismissed, and the defendants' title to the premises should be quieted upon the condition already indicated, and the decree of the lower court should be reversed, with costs of both courts.

OSTRANDER, HOOKER, McALVAY, BROOKE, and BLAIR, JJ., concurred with STONE, J.

MOORE, J. (dissenting). I cannot agree with the conclusion reached by Justice STONE. This case was tried in open court by a judge who lived in the little town where the property in controversy is located. He had the great advantage of hearing and seeing the witnesses. He was of the opinion that the proof established the continuous, adverse, actual, notorious, hostile, and visible possession of complainant and his grantor for more than 15 years before bringing suit. I think this conclusion is abundantly justified by the record.

The railway company got its deeds of right of way in September, 1880. They were not put upon record until April, 1885. In 1881 fences were built inclosing a right of way, but the entire strip deeded was not inclosed. In June, 1881, Gilbert Joslin obtained a deed of lot 16 from the same parties who had deeded to the railroad company, and when he took possession under the deed the fence of the railway company was erected, though its deed was not recorded until four years later. Mr. Joslin, supposing the fence was the boundary line of his lot, took possession up to the fence and built a house upon the lot. In October, 1884, Mr. Joslin deeded to one Lapres, who had as a tenant one Wedge, who repaired the railroad

fence by making it a tight board fence so as to keep chickens out of his garden. Mr. Wedge also built a barn on the inclosed premises, but entirely upon the disputed strip of land. Mr. Lapres deeded to Mr. Bell in 1894, though Mr. Bell went into possession under a land contract from Mr. Lapres in 1889. His possession extended over the strip in question. He lived on the premises until 1900. He then leased it for a time, and then sold it on contract to one Bourrie, who assigned his contract to the complainant, Mr. Sheldon, who went into possession in 1902, and obtained his deed in 1904.

It is true all of the deeds excepted the right of way as granted by the deed dated September 18, 1880; but it is equally true that each of the grantees supposed the land deeded to them included all of the land up to the fence which was erected by the railroad company in 1881. Acting upon this supposition, they went into possession of the disputed strip. This possession was indicated since 1884 by making each year on the front portion of the disputed strip a garden, by the building of a barn thereon earlier than 1889, and continuing the use thereof; by the erection and maintenance of the fences on the front and rear of lot 16, all the way to the railroad fence; by the construction and repair of the sidewalk front of lot 16, all the way to the railroad fence; by the erection of a kitchen, part of which was on the disputed strip; and by other acts of possession. When this possession began in 1881, the railroad fence had been built; but the deed to the railroad company of the right of way was not upon record, and was not recorded until nearly four years later. The case of *Illinois Steel Co.* v. *Budzisz*, 106 Wis. 499 (81 N. W. 1027, 82 N. W. 534, 48 L. R. A. 830, 80 Am. St. Rep. 54), is in point. Marshall, J., speaking for the court, said that one of the questions to be decided was:

" Did the possession of the second occupant, under the circumstances, continue the possession of his predecessor so as to satisfy the statutory call for an uninterrupted 20 years' continuous adverse possession ? "

In answering the question affirmatively the following language was used:

"Is a paper transfer, evidencing a change of possession by succession, necessary to blend the first possession into the second—tack them to each other, as it is called? In that, we adhere to what was said by the court, speaking by Mr. Justice Pinney, in *Allis* v. *Field*, 89 Wis. 327 (62 N. W. 85), and *Ryan* v. *Schwartz*, 94 Wis. 403 (69 N. W. 178), to the effect that, though the possession of several distinct occupants of land, lasting for a continuous period of 20 years, cannot be united to satisfy the limitation statute, successive possessions, each reaching to and uniting with the one that follows it, by privity between the occupants, so as to render the possession of the property continuous from the first entry to the end of the period of 20 years, satisfies the statute, and a parol transfer of possession by one to another, as the former goes out of and the latter goes into possession, satisfies the essential of privity to tack the possessions together. The authorities all agree that privity between successive possessors is all that is necessary to render them continuous, if the possession be in fact actual and adverse. That privity may be created in any way that will prevent a break in the adverse possession and refer the several possessions to the original entry. It may be created by lease, as between landlord and tenant, or by descent by operation of law from ancestor to heir, or by conveyance, either by parol or otherwise, from vendor to vendee. 1 Am. & Eng. Enc. Law (2d Ed.), p. 842, and cases cited in the notes; *McNeely* v. *Langan*, 22 Ohio St. 32; *Haynes* v. *Boardman*, 119 Mass. 414; *Witt* v. *Railway Co.*, 38 Minn. 122 (35 N. W. 862); *Low* v. *Schaffer*, 24 Or. 239 (33 Pac. 678); *Vance* v. *Wood*, 22 Or. 77 (29 Pac. 73); *Crispen* v. *Hannavan*, 50 Mo. 536; *Weber* v. *Anderson*, 73 Ill. 439; *Faloon* v. *Simshauser*, 130 Ill. 649 (22 N. E. 835); *Menkens* v. *Blumenthal*, 27 Mo. 198. The above cases, many of which are referred to in the briefs of counsel, are but a few of the authorities that might be cited to support the doctrine stated. It seems to be conceded by appellant's counsel that many of such authorities are directly contrary to its position, but claim is made that they do not apply by reason of the statute (section 2302) which, as we have indicated, does not apply to the facts of this case. Only a few authorities that can be found are out of line

with those cited. They are in harmony with elementary principles as laid down in the text-books. The doctrine is found as clearly stated, perhaps, as anywhere, in 2 Ballard's Annual of the Law of Real Property, § 25, cited by respondents' counsel; the following language being used:

" 'Successive possessions may be tacked together so as to form a continuous and uninterrupted possession for the essential period of time. There must be a privity existing between the parties transferring the possession. Such possession may begin in parol without deed or writing and may be transferred from one occupant to another by parol bargain and sale, accompanied by delivery. All that the law requires is continuity of possession where it is actual; and this continuity and connection may be effected by any conveyance or understanding which has for its object a transfer of the rights of the possessor or of his possession, when accompanied by an actual delivery of the possession.'

"The doctrine is stated in 2 Pingrey on Real Property, § 1193, thus:

" 'Continuity is an indispensable element of adverse possession; but several possessions may be tacked together where they can be referred to the original entry. No paper evidence of a transfer of possession is necessary when the holding is under claim of the first entryman.'

"The discussion of this subject and citation of authorities might be continued to great length. It will be noted that in every treatment of the matter, whether by text-writers or in judicial opinions, it is said that all that is necessary, where there is continuity of possession in fact, to connect the several parts of it, where there are such parts, so as to blend them into one term, continuous from first to last, is that there be privity between the persons as one succeeds to the other. Privity in such a case is the same as in any other, and it may be created in the same way. It is merely a succession of relationship in the same right to the same thing. 1 Greenleaf on Evidence, §§ 189, 523; *Hart* v. *Moulton*, 104 Wis. 349 (80 N. W. 599, 76 Am. St. Rep. 881). All that is necessary to privity between successive occupants of property, and in regard thereto, is that one receive his possession from the other by act of such other or by operation of law."

See *Matthews* v. *Railway Co.*, 110 Mich. 170 (67 N. W. 1111, 64 Am. St. Rep. 336), and the cases cited therein;

*Schafer* v. *Hauser*, 111 Mich. 622 (70 N. W. 136, 35 L. R. A. 835, 66 Am. St. Rep. 403), and the cases cited therein.

If title by adverse possession was not acquired in this case, I cannot conceive of a case where it should obtain.

I think the decree should be affirmed, with costs.